**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARGARET RUDIN,
*Petitioner-Appellant*,

v.

CAROLYN MYLES; ATTORNEY
GENERAL OF THE STATE OF NEVADA,
*Respondents-Appellees*.

No. 12-15362

D.C. No.
2:11-cv-00643-
RLH-GWF

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Senior District Judge, Presiding

Argued and Submitted
February 11, 2014—San Francisco, California

Filed September 10, 2014
Opinion Withdrawn and New Opinion Filed
March 10, 2015

Before: Diarmuid F. O'Scannlain and Mary H. Murguia,
Circuit Judges, and Lynn S. Adelman, District Judge.[*]

Order;
Opinion by Judge Murguia;
Concurrence by Judge Adelman;
Dissent by Judge O'Scannlain

---

[*] The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

## SUMMARY[**]

Habeas Corpus

The panel withdrew an opinion filed on September 10, 2014, and filed a new opinion reversing the district court's order dismissing as untimely Nevada state prisoner Margaret Rudin's 28 U.S.C. § 2254 habeas corpus petition challenging her conviction of murder with the deadly use of a weapon and unauthorized surreptitious intrusion of privacy by listening device.

The panel held that because the Nevada State Supreme Court concluded that Rudin's state post-conviction petition was untimely under state law, Rudin is not entitled to statutory tolling under 18 U.S.C. § 2244(d)(2) for the duration of her state post-conviction proceedings.

The panel held that extraordinary circumstances prevented Rudin from filing her application for federal habeas relief, and that she is therefore entitled to equitable tolling of the AEDPA statute of limitations, between November 10, 2004, and August 22, 2007 – during which period the first attorney appointed to represent Rudin in collateral review proceedings abandoned her, and during which period she was diligent in pursuing her rights.

The panel held that the state post-conviction court's finding – at an August 22, 2007, status conference, immediately upon discovering counsel's failure to file a

   [**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

post-conviction petition in state court – of "extraordinary circumstances" that would "extend the one year deadline," coupled with the state's failure to brief the timeliness question or move to dismiss Rudin's petition, "affirmatively misled" Rudin into believing that the state court had excused her late filing and that her federal limitations period would be statutorily tolled. The panel explained that until the state court's finding was challenged or reversed – that is, as long as Rudin's petition was deemed "properly filed" by the state post-conviction court – Rudin remained entitled to statutory tolling of the federal clock.

The panel held that Rudin satisfied her burden to show that she is entitled to equitable tolling of the AEDPA limitations period until January 20, 2011, when the extraordinary circumstances making it impossible for her to file her federal petition on time were removed, giving her until September 9, 2011, to file her petition for federal habeas relief in the district court. Because Rudin filed her petition on April 25, 2011, the panel concluded that her petition was timely filed.

The panel remanded for further proceedings and denied the state's motion to expand the record on appeal.

Concurring, District Judge Adelman wrote that a contrary result would require the essentially pointless early filing of federal petitions by prisoners who reasonably believe that their claims are properly pending, unexhausted, in state courts.

Dissenting, Judge O'Scannlain wrote that Rudin is not entitled to equitable tolling beyond the August 22, 2007, conference because she failed to act with reasonable diligence

to protect her rights for the duration of the relevant time period.

## COUNSEL

Christopher Oram, Las Vegas, Nevada, for Petitioner-Appellant.

Jamie J. Resch (argued), Senior Deputy Attorney General, and Catherine Cortez Masto, Attorney General, Office of the Attorney General, Las Vegas, Nevada, for Respondents-Appellees.

Rene L. Valladares, Federal Public Defender, Megan Hoffman, Chief, Non-Capital Habeas Unit, Heather Fraley , Assistant Federal Public Defender, Las Vegas, Nevada, for Amicus Curiae Federal Public Defender for the District of Nevada.

## ORDER

The opinion filed on September 10, 2014, and appearing at 766 F.3d 1161, is withdrawn. The superseding opinion will be filed concurrently with this order. The parties may file additional petitions for rehearing or rehearing en banc.

## OPINION

MURGUIA, Circuit Judge:

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year period of limitation within which an individual seeking relief must file an application for a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Once that one-year period begins to run, it may be tolled only in certain circumstances. *See id.* § 2244(d)(2) (providing for statutory tolling); *Holland v. Florida*, 560 U.S. 631, 634 (2010) (providing for equitable tolling). The question this case presents is whether Petitioner Margaret Rudin is entitled to statutory or equitable tolling of the AEDPA limitations period, excusing her six-year delay in filing her application. We conclude that she is entitled to equitable tolling sufficient to excuse her delay. We therefore reverse the district court's order dismissing Rudin's application as untimely.

## I. FACTS

The facts giving rise to this appeal are essential to our tolling analysis. We therefore describe those facts in more detail than we otherwise might.

### A. *Rudin's Criminal Trial and Direct Appeal Proceedings*

In April 1997, Rudin was charged with murder with the use of a deadly weapon and unauthorized surreptitious intrusion of privacy by listening device, both in violation of Nevada state law. *See* Nev. Rev. Stat. §§ 200.010; 193.165; 200.650. Those charges arose out of the death of Rudin's husband Ron, whose charred remains had been discovered in

Lake Mojave a few years earlier. *See Rudin v. State*, 86 P.3d 572, 577 (Nev. 2004). After pleading not guilty to both charges, Rudin retained the services of a private attorney, Michael Amador, to represent her at trial. Her trial began in the Eighth Judicial District Court of the State of Nevada (the "trial court" or the "court") on March 2, 2001.

Two-and-a-half weeks before trial commenced, it became clear to the court that Amador alone could not adequately defend Rudin. After a series of pretrial delays, the court appointed attorney Thomas Pitaro to assist Amador with Rudin's defense. Pitaro quickly realized that Amador had not yet reviewed "thousands of pages of discovery," and Pitaro soon became "concerned about the preparation that had been done for the trial." Amador had not, for example, interviewed critical witnesses. As a result, the defense team would learn, for the first time at trial, the content of various witnesses' testimony. In at least one instance, when a witness was called to the stand, Pitaro "went to get from Mr. Amador the [witness's] file and found nothing inside." As Pitaro would later describe, "the preparation that [one] would hope normally would be done before trial starts was being done during the trial."

But even with Pitaro's help, Rudin's trial was replete with alleged errors and professional misconduct on the part of the defense team. Amador, for example, began with an opening statement that had "no cohesive theme." Over the course of trial, Amador was accused of creating a prejudicial conflict of interest by allegedly negotiating agreements for the literary and media rights to his representation. *Rudin*, 86 P.3d at 587–88. His general lack of preparation prompted Rudin twice to move for a mistrial, but both of her motions were denied. *Id.* at 579–80, 585–86. Pitaro, who was appointed

after Amador's opening statement, described the representation as " 'a farce, and that disturbs me as an attorney. . . . This has become a sham, a farce and a mockery.' "[1] *Id.* at 590 (Rose, J., dissenting).

A jury convicted Rudin on both charges. For her conviction for murder with the use of a deadly weapon, the trial court imposed a sentence of life imprisonment with a possibility of parole after twenty years. For her conviction for unauthorized surreptitious intrusion of privacy by a listening device, the court imposed a one-year sentence, to run concurrently with Rudin's life sentence. Rudin's judgment of conviction was entered on September 17, 2001.

On April 1, 2004, the Nevada Supreme Court affirmed both of Rudin's convictions on direct appeal. *See Rudin v. State*, 86 P.3d 572 (Nev. 2004). The court concluded that Amador's alleged conflict of interest and ineffectiveness, while sufficient to cause "concern," "must be examined in a separate post-conviction proceeding at which time Rudin's post-conviction attorney will examine the entire record, interview all relevant witnesses and present the matter to the district court for a full and complete airing and decision." *Id.* at 588.[2] The Nevada Supreme Court's remittitur issued on

---

[1] By the time Rudin's trial ended, the court had actually appointed a third attorney, John Momot, to assist with the defense. *Rudin*, 86 P.3d at 580.

[2] Two of the six justices dissented. They concluded that

> there is sufficient evidence in the record, without the necessity of post-trial proceedings, to establish that the defense was totally unprepared to try this case and that Amador had a substantial conflict of interest with his

April 27, 2004, and Rudin did not seek a writ of certiorari from the U.S. Supreme Court.  The deadline for her to do so was June 30, 2004.**³**

### B.  Rudin's Petitions for Collateral Relief

Around the time that appellate review of Rudin's judgment of conviction concluded, two statutes of limitation began to run, both relating to her ability to seek collateral review of the errors that she alleged had affected her underlying criminal trial.  The first limitations period is defined by state law and requires, except under certain circumstances, that a state-court petition for post-conviction relief be filed within one year of the Nevada Supreme Court issuing its remittitur:

> Unless there is good cause shown for delay, a petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the Supreme Court issues its remittitur.  For the purposes of this subsection, good cause for delay exists if the petitioner demonstrates to the satisfaction of the court:

---

client.  This was prejudicial to Rudin, and the result reached was unreliable.

Rudin, 86 P.3d at 595 (Rose, J., dissenting).

**³** Rudin had ninety days from the date of the Nevada Supreme Court's decision, which was issued on April 1, 2004, to petition for a writ of certiorari.  Sup. Ct. R. 13(3).

(a) That the delay is not the fault of the petitioner; and

(b) That dismissal of the petition as untimely will unduly prejudice the petitioner.

Nev. Rev. Stat. § 34.726(1). The second limitations period is defined by AEDPA, and it also establishes a one-year deadline for a state prisoner seeking a federal writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The AEDPA limitations period runs from the latest of four specified dates:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court

and made retroactively applicable to cases
on collateral review; or

(D) the date on which the factual predicate
of the claim or claims presented could
have been discovered through the exercise
of due diligence.

*Id.* The AEDPA limitations period may be tolled if a
petitioner "properly file[s]" a petition for post-conviction
relief in state court; where that occurs, the limitations period
will be tolled for the time during which the state-court
petition is pending. *Id.* § 2244(d)(2).

Thus, from the date on which the Nevada Supreme Court
issued its remittitur, which was April 27, 2004, Rudin had
one year, or until April 27, 2005, to file a petition for post-
conviction relief in state court. And from the date on which
the deadline passed for seeking a writ of certiorari from the
U.S. Supreme Court, which was June 30, 2004, she had one
year, or until June 30, 2005, to file an application for a writ of
habeas corpus in federal court. If Rudin were "properly" to
file her state post-conviction petition, the time for filing an
application for federal habeas relief would be statutorily
tolled.

With that statutory background in mind, we turn to the
series of events that occurred during each of those respective
one-year periods in this case.

### 1. *Attorney Dayvid Figler's Representation*

On April 30, 2004, three days after the Nevada Supreme
Court issued its remittitur on direct appeal of Rudin's

judgment of conviction, Rudin's appellate counsel, Craig Creel, moved to withdraw as counsel and asked the trial court to appoint post-conviction counsel. The trial court granted Creel's motion on June 8, 2004. Rudin, proceeding pro per, filed a similar motion on July 14, 2004, also seeking appointment of post-conviction counsel.[4] At a hearing on November 10, 2004, after 197 days had passed since the state supreme court issued its remittitur, the court granted Rudin's motion and appointed attorney Dayvid Figler to represent her.[5] Two weeks later, on November 24, 2004, the court issued an order to that effect.[6]

At the November 2004 hearing at which the state court appointed Figler to represent Rudin, Rudin attempted pro per to file with the court a series of papers. In the district court and on appeal, Rudin contends that those papers would have

---

[4] We assume that the state court was required, under Nevada Rule of Appellate Procedure 46(d)(3)(C), to wait to set a hearing date until after Rudin had filed her pro per motion for appointment of post-conviction counsel. Under that rule, in a post-conviction appeal, an attorney's motion to withdraw as counsel "shall be accompanied by . . . a motion by defendant to proceed in proper person or with substitute counsel."

[5] The record is not clear as to the reason, if any, that the post-conviction court delayed four months in hearing Rudin's pro per motion for appointment of post-conviction counsel. *Cf.* Nev. Rev. Stat. §§ 34.740 (requiring "expeditious judicial examination" of petitions for post-conviction relief); 34.726 (limiting the period for filing a petition to one year). In the district court, Rudin argued in passing that the state court's four-month delay was "unnecessarily long" and was a part of the "extraordinary circumstances" that gave rise to her filing delay. She does not renew that argument on appeal.

[6] We take November 10, 2004, not November 24, 2004, as the date on which Figler's representation commenced.

constituted a "properly filed" post-conviction petition had the court accepted them. *See* 28 U.S.C. § 2244(d)(2). Pursuant to the applicable local rules, however, the court declined to accept them and instead "turned [them] over to Mr. Figler."[7] But Figler never filed them with the court. One month later, in December 2004, Judge Bonaventure, who had presided over Rudin's trial and post-conviction proceedings up until that point, recused himself sua sponte, and Rudin's case was reassigned.[8]

When Rudin's case was reassigned to another judge on December 29, 2004, 246 days had passed since the Nevada Supreme Court issued its remittitur. Rudin therefore had 119 days left to file a petition for post-conviction relief in state court. With respect to AEDPA, 182 days had passed since that limitations period had begun to run, leaving Rudin with 183 days to file an application for federal habeas relief. Again, the deadlines for filing those petitions were April 27, 2005, and June 30, 2005, respectively. And although Rudin had once tried to file a petition for relief in state court herself, the post-conviction court rejected that effort because the local

---

[7] Rule 3.70 of the Rules of Practice for the Eighth Judicial District Court of the State of Nevada provides that papers "delivered to the clerk of the court by a defendant who has counsel of record will not be filed [but will be] forwarded to that attorney for such consideration as counsel deems appropriate."

[8] Judge Bonaventure recused himself as a result of personal biases that he had against Rudin's previous appellate counsel, Craig Creel. *See* Matt Pordum, *Bonaventure Won't Hear Rudin Appeal*, Las Vegas Sun, Dec. 28, 2004, http://www.lasvegassun.com/news/2004/dec/28/bonaventure-wont-hear-rudin-appeal/ (" 'My blood boils every time I hear the name Craig Creel. . . . Whether I look at him or think of him, my blood boils. I'm getting a headache thinking of him right now.' " (quoting Bonaventure, J.)).

rules prohibited Rudin from doing so when she had "counsel of record."

\*     \*     \*     \*     \*

The record suggests that, after Rudin's case was reassigned (and perhaps as a result of that reassignment), substantial confusion arose between the parties and the court about whether Rudin had already filed a petition for post-conviction relief. On January 5, 2005, for example, the state court held a status hearing on Rudin's "opening brief." The court's use of the term "opening brief" suggested that the parties and the court believed that Rudin's initial petition for post-conviction relief had been filed but that Rudin had yet to file a brief in support of that petition. *See* Nev. Rev. Stat. § 34.735 (establishing the form of a petition). At the same status hearing, the court granted Figler a continuance, extending his time to file the "brief" and setting a second status hearing for July 13, 2005. At the July 13th status hearing, Figler again requested "an additional 90 days to file his brief," which the court granted the following week. By that date, both of Petitioner's one-year limitations periods for filing her requests for collateral relief had run. But nobody— neither Figler, nor the State, nor the court—recognized that to have occurred. On January 18, 2006, the post-conviction court again granted Figler an additional "45 days in which to file his opening brief due to the voluminous record in this case." The State would later confirm that, at that time, the State and the court were "under the mistaken impression" that a petition had already been filed.

Meanwhile, Rudin became concerned—and we believe rightfully so—that Figler was not adequately representing her in her collateral review proceedings. According to Rudin, at

some point in 2005, she requested that Figler provide her with copies of her file. Figler did not immediately respond. Figler visited Rudin only a handful of times that year, but he did not interview the witnesses she identified, and he never informed her that he had requested a series of continuances on the basis of the "complexity" of her case. Figler last visited Rudin in May 2006, which was the first time in almost a year that he had done so.

In November 2005, Rudin began to gather information in support of her soon-to-be-filed motion to substitute counsel. First, she submitted an Inmate Request Form to the prison staff asking for a summary of the attorney visits she had received that past year. In a response dated a few weeks later, the staff informed her that she had received four visits in 2005, occurring on January 4, February 7, February 25, and June 17. In January 2006, after multiple failed attempts to contact Figler, Rudin submitted a second Inmate Request Form notifying prison staff that she had "not been able to call [her] attorney since [December 15, 2005]" and requesting that the staff fix the problem, which she was concerned was "at this facility." Three weeks later, the prison staff responded, informing Rudin that Figler had a collect call block on his office phone and that Rudin would need to send a letter to Figler requesting that the block be removed. At the same time, Rudin's friend, who was not in prison, "repeatedly . . . requested [that Figler] visit [Rudin]; have the telephone block removed; not postpone [Rudin's] post conviction brief filing; and send her a copy of the opening brief," all to no avail.

Figler never filed anything with the state post-conviction court. On April 5, 2006, 511 days after Figler was appointed, Rudin moved to substitute counsel. In her motion, she described Figler's inadequacies and expressed her "grea[t]

concer[n] that she [was] not receiving adequate representation regarding her post conviction." At a hearing on July 17, 2006, the court granted her motion and, at the same time, appointed attorney Christopher Oram, who continues to represent Rudin on appeal, to represent her.[9] The court filed an order to that effect on August 17, 2006.

To summarize the facts leading up to this point: By August 17, 2006, the day that Figler was relieved from his duties to represent Rudin, almost two years had passed since the day he was appointed to represent her. Early on in the course of Figler's representation, Rudin's case was reassigned to a new judge, who granted at least three of Figler's requests for additional time to file an "opening brief." At no point did the court ever mention the one-year limitations period under Nevada state law, and at no point did the State raise timeliness concerns. And while Figler regularly attended the court's status hearings, he appears to have done nothing else in support of his client's request for post-conviction relief. Indeed, after June 2005, Figler stopped communicating with his client altogether, by declining to visit her in prison and by placing a collect call block on his office telephone. When Figler's representation ended, 842 days had passed since the day Rudin's one-year state limitations period began to run, and 778 days had passed since the day her one-year AEDPA limitations period began to run. Of those days, 645 and 581, respectively, had run under Figler's watch. And during that time, Figler had filed nothing in either state or federal court.

---

[9] Attached to Petitioner's motion to substitute counsel was what she called a "brief opening supplement," presumably to her petition for post-conviction relief. When the post-conviction court ruled on her motion, however, it appears to have construed the filing solely as a motion to substitute counsel, not as a petition for post-conviction relief.

## 2. *Attorney Christopher Oram's Representation*

Oram's representation began on August 17, 2006,[10] and has continued through the course of this appeal. Oram finally filed a post-conviction petition in state court on August 21, 2007. Prior submissions or references to Rudin's "opening brief" notwithstanding, Oram's August 21, 2007, submission appears to have been the first and only petition for post-conviction relief filed in the state court. It was filed three years and 116 days after the state-law statute of limitations began to run—or 846 days too late.

A colloquy between Oram, the post-conviction court, and the State at a status conference on August 22, 2007, demonstrates that, even at that late date, the parties were still confused as to whether a petition for post-conviction relief had actually been filed. Oram initially raised the issue by suggesting that he re-label his most recent filing as a petition for "a writ of habeas corpus" as opposed to a "supplement." The post-conviction court agreed and proceeded to find "extraordinary circumstances" to excuse the delay in filing:[11]

> MR. ORAM: [M]y fear is, as I look at the statute, that – um – the one year deadline to file, I looked at it and it said that – uh – the court can excuse it, and can delay the process,

---

[10] We consider Figler's representation to have extended until the date on which the court entered its order substituting counsel, which was August 17, 2006.

[11] We assume that the post-conviction court's reference to "extraordinary circumstances" is equivalent to, or was intended to mean, "good cause," which is the standard to excuse a filing delay under Nevada Revised Statute section 34.726.

which I assume was going on while Mr. Figler was going through this. But perhaps I should relabel the petition for writ of habeas corpus. I may need to amend it today, just to say where she's located, because that's what the statute requires.

THE COURT: Okay. I may say you should probably do that. Just do that as like a one page sheet, like an errata to your deal.

MR. ORAM: Yes.

THE COURT: And the court will find, as a matter of finding today, that [your] filing of the writ for post-conviction relief is timely, based upon – um – the fact that – uh – Mr. Figler had the case for so many years. I believe it was years.

MR. ORAM: It was two years. Yes, it was two years.

THE COURT: It was two years, and filed nothing, even though we kept having status checks. So – um – we're going to find that it was timely filed.

. . . .

Um – and it was an extensive trial. Didn't it take several weeks?

MR. ORAM: Ten weeks.

. . . .

> THE COURT: Ten week trial. So that
> would be the extraordinary circumstance that
> we would find would allow the petition for
> post-conviction relief be filed. That, plus the
> fact that the first attorney didn't do anything.

At that point, and for the very first time in two years, the
State became aware that no petition had been filed and
decided to speak up:

> [THE STATE]: I think, Judge, that sets a
> bad precedent, in light of the fact that we can
> get multiple attorneys, and every attorney that
> gets this says, well, he had it too long, he had
> it too long. We'd like to at least address that,
> before you make that finding.

The post-conviction court obliged, declining to make a
finding until the State had the opportunity to address the issue
in further briefing. It noted, however, that "I really think that
the court is going to find, not only this court, but the next
court, is going to find that there were extraordinary
circumstances in this case, which would allow the court to
extend the one year deadline." The State never did brief the
timeliness question, nor did it ever move to dismiss Rudin's
petition.

On December 19, 2008, the post-conviction court held a
hearing to consider the merits of Rudin's petition for relief.
At that hearing, the court questioned whether "the defense . . .
start[ed] out so far behind the starting line of this trial that no
matter how much time the [c]ourt gave them during the trial

. . . it ultimately [was] an unfair trial."  The post-conviction court went on to state,

> And there's two standards for *Strickland*:[12] One is was counsel effective, and then the second standard is even if counsel wasn't effective was the evidence so overwhelming . . . against the defendant [that] it wouldn't make any difference who defended her and how prepared they were and how many experts they called because the decision would always be guilty of murder.
>
> In this case I can't say that that is true.  I didn't try the case, but in reviewing the writ filed by Mr. Oram and reviewing the response by the State, and I had commented on the 22nd of October that the case was full of a cast of characters together with witnesses, and the case had a lot of intrigue and spins and loops, and there was a lot of ulterior motives on people who testified.
>
> . . . .
>
> The experts couldn't agree on much of anything in this case as I read the dry record. The proof of guilt was not a slam dunk by any stretch of the imagination for the State, so I can't say – I cannot say in this case that no matter who had defended her that the verdict would have been the same.

---

[12] *Strickland v. Washington*, 466 U.S. 668 (1984).

After hearing testimony from defense attorneys Pitaro and Momot, the court granted Rudin's request for post-conviction relief and ordered her a new trial. The post-conviction court described Rudin's prior trial as a "mockery of our promise to people who are in the criminal justice system that they will have an adequate defense."

The State appealed, arguing for the first time on appeal that Rudin's petition was untimely. In its brief, the State confirmed what we think is suggested by the record: that "the prosecution and the judge were under the mistaken impression that an initial petition had been timely filed."

The Nevada Supreme Court reversed the post-conviction court's judgment. It concluded that neither of that court's stated reasons for excusing Rudin's delay "affords a factual or legal basis to find that Rudin's claims were not reasonably available to be raised in a timely manner." Rudin sought en banc reconsideration, which the Nevada Supreme Court denied on January 20, 2011. It was only after the Nevada Supreme Court denied en banc reconsideration of Rudin's state post-conviction appeal that Oram filed an application for habeas relief in federal court.

*    *    *    *    *

On April 25, 2011, Rudin, still represented by Oram, applied for habeas relief in federal court. By that time, almost seven years had passed since the deadline for seeking a writ of certiorari from the U.S. Supreme Court, *see* 28 U.S.C. § 2244(d)(1)(A), making her application almost six years too late under AEDPA. In her application, Rudin contended that the Nevada Supreme Court erred in finding her state-court petition for post-conviction relief time-barred

because either (1) the petition was timely, or (2) the State had waived any argument to the contrary when it failed to make a timeliness argument before taking its appeal. For those reasons, according to Rudin, the federal district court should have considered her state-court petition to be "properly filed" and given her the benefit of statutory tolling of the AEDPA limitations period. *See* 28 U.S.C. § 2244(d)(2). In the alternative, Rudin argued that equitable tolling pursuant to *Holland v. Florida*, 560 U.S. 631 (2010), also applied to her case. The district court granted the State's motion to dismiss, dismissed Rudin's petition with prejudice, and denied the certificate of appealability. On October 24, 2012, we granted Rudin's request for a certificate of appealability on the question "whether the district court properly determined that the petition was barred by the statute of limitations." We turn now to that question.

## II.  DISCUSSION

We review de novo the question whether a petitioner's application for federal habeas relief was timely filed. *Noble v. Adams*, 676 F.3d 1180, 1181 (9th Cir. 2012). We also review de novo the question whether AEDPA's statute of limitations should be tolled. *See Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). Unless the facts are undisputed, we review the district court's findings of fact underlying a claim for equitable tolling for clear error. *Stancle v. Clay*, 692 F.3d 948, 953 (9th Cir. 2012). The petitioner bears the burden to establish that she is entitled to tolling of the AEDPA limitations period. *Id.*

## A. Statutory Tolling

We begin with Rudin's argument that she is entitled to statutory tolling of the AEDPA limitations period. On this point, Rudin appears to argue that the Nevada Supreme Court erred when it found her state post-conviction petition untimely, and that had it not so erred, her petition would be considered "properly filed" under 28 U.S.C. § 2244(d)(2), entitling her to statutory tolling of the AEDPA limitations period.[13]

---

[13] In *Coleman v. Thompson*, 501 U.S. 722, 755 (1991), the Court noted that a habeas petitioner may have a constitutional right to the assistance of effective counsel in collateral proceedings, where state collateral review is the first place a prisoner can present an ineffective assistance claim. *See id.*; *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012) ("*Coleman v. Thompson* left open . . . a question of constitutional law: whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial."). *But see Buenrostro v. United States*, 697 F.3d 1137, 1139–40 (9th Cir. 2012) ("*Martinez* did not decide a new rule of constitutional law."). Rudin does not explicitly articulate a claim for ineffective assistance of her state post-conviction relief counsel, but we notice that this claim nonetheless pervades her claim for equitable tolling. Assuming *arguendo* that Rudin had stated such a claim, and that this Court were to recognize the constitutional right left open by *Coleman* and acknowledged by *Martinez*, Rudin may have qualified for statutory tolling under 28 U.S.C. § 2244(d)(1)(D).

To state a claim for ineffective assistance of counsel, a habeas petitioner must show both (1) deficient performance, and (2) stemming from that deficient performance. *Strickland*, 466 U.S. at 687. Here, although Rudin learned of Figler's deficient performance by August 22, 2007 at the latest, she was not prejudiced by his deficient performance until January 20, 2011, when the Nevada Supreme Court declined to toll the time of Figler's abandonment and barred Rudin's state petition as untimely. Accordingly, "the factual predicate" of her claim for ineffective assistance of post-conviction relief counsel could not have been

While we may not have made the same decision as the Nevada Supreme Court, we are not at liberty to second guess that court's decision when it was acting on direct appeal of the state post-conviction court's judgment. The state supreme court concluded that Rudin's petition was untimely under state law, and "[w]hen a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (internal quotation marks omitted) (second alteration in original); *accord Zepeda v. Walker*, 581 F.3d 1013, 1018 (9th Cir. 2009). In light of *Pace*, and because the Nevada Supreme Court is the final arbiter of Nevada state law, that is the end of the matter here. Rudin is not entitled to statutory tolling under § 2244(d)(2) for the duration of her state post-conviction proceedings.[14]

## B. Equitable Tolling

We turn, therefore, to Rudin's argument that she is entitled to equitable tolling under *Holland v. Florida*. A petitioner is entitled to equitable tolling if she can establish that (1) she was pursuing her rights diligently, but (2) some

---

discovered until January 20, 2011, 28 U.S.C. § 2244(d)(1)(D), and the statutory limitations period for that claim would not have begun to run until that date. *See Hasan v. Galaza*, 254 F.3d 1150, 1154–55 (9th Cir. 2001).

[14] We likewise reject Rudin's argument that she can claim the benefit of equitable tolling in state court, thereby entitling her to statutory tolling in federal court. Equitable tolling under *Holland v. Florida* is a federal doctrine entirely separate from state law. *See* 560 U.S. at 650 ("Equitable tolling [is] an inquiry that does not implicate a state court's interpretation of state law."); *see also Coleman*, 501 U.S. at 732 (applying the independent and adequate state ground doctrine to the habeas context).

extraordinary circumstance stood in her way. *Pace*, 544 U.S. at 418; *Sossa v. Diaz*, 729 F.3d 1225, 1229 (9th Cir. 2013) ("[E]quitable tolling is available 'only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of [the prisoner's] untimeliness.'" (second alteration in original) (quoting *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010)). Rudin bears a heavy burden to show that she is entitled to equitable tolling, "lest the exceptions swallow the rule," *Bills*, 628 F.3d at 1097 (internal quotation marks omitted); however, the grounds for granting equitable tolling are also highly fact-dependent, *Sossa*, 729 F.3d at 1229. At bottom, the purpose of equitable tolling is to "soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having [her] day in court." *United States v. Buckles*, 647 F.3d 883, 891 (9th Cir. 2011) (internal quotation marks omitted); *see also Holland*, 560 U.S. at 650 ("[W]e have followed a tradition in which courts of equity have sought to 'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity.'" (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944))).

In *Holland*, the Supreme Court held that AEDPA's limitations period may be tolled for equitable reasons. 560 U.S. at 649. In that case, the petitioner's attorney had failed to file a timely application despite the petitioner's repeated requests to do so, failed to inform the petitioner about crucial facts related to his case, and failed to communicate altogether with his client over a period of several years. *Id.* at 2564. The Supreme Court found those circumstances to constitute more than a "garden variety claim

of excusable neglect," and instead concluded that the attorney's egregious misconduct amounted to, in essence, abandonment. *Id.*; *id.* at 2568 (Alito, J., concurring); *see also Maples v. Thomas*, 132 S. Ct. 912, 923–24 (2012) (adopting Justice Alito's reasoning in *Holland* addressing attorney abandonment).**[15]** Because of that abandonment, the petitioner's delay could be deemed to result from misconduct that could not constructively be attributed to him, and therefore the AEDPA limitations period could potentially be tolled for the relevant period of time. *Holland*, 560 U.S. at 652–53.

To be entitled to equitable tolling of the AEDPA limitations period, Rudin thus bears the burden to prove that she has been pursuing her rights diligently but that extraordinary circumstances made it impossible for her to file her application on time. *See Pace*, 544 U.S. at 418. Under *Holland*, attorney abandonment may give rise to such extraordinary circumstances. 560 U.S. at 652–53. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Id.* at 2565 (citations and second and third internal quotation marks omitted). We readily conclude that extraordinary circumstances in part gave rise to Rudin's delay in filing her application for federal habeas relief.

---

**[15]** Mere negligence on the part of a prisoner's post-conviction counsel does not warrant equitable tolling. *Holland*, 560 U.S. at 651–52. "That is so . . . because the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." *Maples*, 132 S. Ct. at 922 (quoting *Coleman*, 501 U.S. at 753–54). But when an attorney abandons his client, the principal-agent relationship is severed, and the attorney's "acts or omissions therefore 'cannot fairly be attributed to [the client].'" *Id.* at 923 (alteration in original) (quoting *Coleman*, 501 U.S. at 753).

### 1.  July 1, 2004, Through November 10, 2004

Between July 1, 2004, the day the AEDPA limitation period began to run, and November 10, 2004, the day that Figler was appointed to represent Rudin, Rudin was not represented by counsel.  During that time, Rudin cannot establish that "extraordinary circumstances" existed to equitably toll the AEDPA limitation period.  *See Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) ("[P]ro se status, on its own, is not enough to warrant equitable tolling."). Thus, during that time, 133 non-tolled days passed on Rudin's AEDPA clock.

### 2.  November 10, 2004, Through August 22, 2007

On November 10, 2004, Figler was appointed to represent Rudin in her collateral review proceedings.[16]  After Figler was appointed, however, he abandoned her.  Over the course of his period of representation, Figler visited Rudin in prison only a handful of times, and by mid-2005, those visits had stopped.  He had a collect call block placed on his office phone, making him all but impossible to reach.  And while we acknowledge that Figler physically attended the post-conviction court's status hearings, the record makes clear that he did so with seemingly no intention to actually represent his client.  All the while, Figler failed to inform Rudin of the reasons for his delay, providing her no clue of "any need to protect [herself] pro se."  *See Maples*, 132 S. Ct. at 917.  On the record before us, it does not appear that *anyone* was

---

[16] It is significant that Figler's representation commenced before June 30, 2005—the last day of Rudin's AEDPA limitation period.  That is so because extraordinary circumstances cannot toll a statute of limitations that has already run.

aware of Rudin's need to protect herself until at least August 22, 2007. We therefore conclude that extraordinary circumstances prevented Rudin from filing her application for federal habeas relief between November 10, 2004, and August 22, 2007.

Rudin was also diligent in pursuing her rights during that time, beginning with her attempt to file pro per a petition for post-conviction relief on November 10, 2004. Over the course of Figler's representation, Rudin made repeated attempts to contact him, provided him with witness information relevant to her case, and requested that he provide her with copies of her files so that she could take additional steps on her own behalf. When Figler repeatedly failed to respond, Rudin prepared and filed her own motion to substitute counsel, which had a "brief opening supplement" attached to it. Until she filed that motion, Rudin had done everything short of filing her own "opening brief," which, as the state court had already made clear, the local rules prohibited her from doing. We conclude that Rudin was "reasonably diligent" during the period of Figler's representation, which is all that is required for equitable tolling purposes. *See Holland*, 560 U.S. at 653–54.

Rudin is therefore entitled to equitable tolling of the AEDPA statute of limitations during the time in which Figler was representing her and up until the point at which Oram became aware that Figler had never filed anything on Rudin's

behalf.[17]  That period of time ran from November 10, 2004, to August 22, 2007.

The State argues that Rudin cannot avail herself of the benefit of equitable tolling during that time because Figler represented Rudin only in state court, not in federal court. On that point, the State contends that Figler's inadequacies in state court had no bearing on Rudin's ability to file a timely federal application for relief.  It argues that, pursuant to *Pace*, Rudin should have filed a "protective" application in federal court and asked the court to stay and abey its habeas proceedings while she exhausted her state-court remedies. 544 U.S. at 416 ("A prisoner seeking state postconviction relief [may file] a 'protective' petition in federal court and as[k] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.").  Under the specific circumstances of this case, we are not persuaded by the State's argument.  *See Holland*, 560 U.S. at 632 ("[S]pecific circumstances . . . could warrant special treatment in an appropriate case.").

For all Rudin knew—and, indeed, until August 22, 2007, for all the *State* knew—Rudin's state-court petition had already been filed, making her eligible for statutory tolling under § 2244(d)(2).  During the period that Figler had represented her, almost every reference to the pending filing was to an "opening" or "supplemental brief," suggesting that the court had already received her initial petition.  Even the State concedes that it believed that to be the case.  During the

---

[17] Regrettably, this Court has become familiar with Figler's repeated abandonment of his habeas clients. *See, e.g.*, *Gibbs v. LeGrand*, 767 F.3d 879, 888 n.7 (9th Cir. 2014) ("Figler's abandonment of both Gibbs and Rudin is deeply troubling, to say the least.").

period in which Rudin "lacked a clue" of any need to protect herself, we decline to impute to her knowledge that neither the State nor the court possessed. *See Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002) (declining to impute to a petitioner knowledge that, "[e]ven with the benefit of legal training, ready access to legal materials and the aid of four years of additional case law, . . . evaded both [petitioner's] appointed counsel and the expertise of a federal magistrate judge").[18]

---

[18] The State filed a motion in this court to expand the record on appeal to include various state-court documents that it had not, for whatever reason, made a part of the record in the district court. As a general rule, documents not filed with the district court cannot be made part of the record on appeal. *See* Fed. R. App. P. 10(a) ("[T]he original papers and exhibits filed in the district court; the transcript of proceedings, if any; and a certified copy of the docket entries prepared by the district clerk . . . constitute the record on appeal."); *Kirschner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988). There are of course narrow exceptions to that general rule, which we may, in our discretion and in "unusual circumstances," invoke. *Lowry v. Barnhart*, 329 F.3d 1019, 1024–25 (9th Cir. 2003) (listing exceptions).

The State offers no compelling reason for its failure to make these documents part of the record in the district court. Ironically, the reasons it offers for doing so are the same reasons to which it objected when the state post-conviction court found that Rudin had established good cause for her filing delay: that "this is not a typical case," that "Rudin's trial was one of the longest in Nevada history," and that, overall, the proceedings below were complex.

We do not need the documents that the State seeks to make part of the record on appeal in order to decide this case. Thus, we decline to depart from our general rule. The State's motion to expand the record on appeal is **DENIED**.

*3.   August 23, 2007, Through January 20, 2011*

On August 22, 2007, at the status conference in the state post-conviction court, the parties first became aware of the fact that Figler had never filed a post-conviction petition in state court. From that point forward, Rudin was put on notice of the fact that nothing had been "properly filed" in either state or federal court on her behalf. However, immediately upon discovering Figler's failure to file, the post-conviction court found "extraordinary circumstances" that would "extend the one year deadline."

This finding, coupled with the state's failure to brief the timeliness question or move to dismiss Rudin's petition, "affirmatively misled" Rudin into believing that the state court had excused her late filing and that her federal limitations period would be statutorily tolled. *See Sossa*, 729 F.3d at 1232 (citing *Pliler v. Ford*, 542 U.S. 225, 234 (2004)). In *Sossa*, we held that where a petitioner was affirmatively misled to believe that her limitations period was being tolled under the statute, this inaccuracy could entitle her to equitable tolling. *See id.* at 1232–35. Similarly here, the state court's finding of "extraordinary circumstances" led Rudin to believe that her limitations period would be statutorily tolled. By excusing Rudin's delay in state court, the state post-conviction court conveyed that Rudin's state petition was "properly filed" and, by extension, that her time to file a federal petition would be extended under the statute. *See id.* as 1233.[19]   Until the state court's finding was

---

[19]    Contrary to the dissent, that *Sossa* considered the inaccuracy of a federal magistrate judge's instructions, rather than a state court judge's instructions, is immaterial. *Sossa* does not limit its reasoning to actions by federal forums. *See id.* at 1235 (reasoning that the state bears

challenged or reversed—that is, as long as Rudin's petition was deemed "properly filed" by the state post-conviction court—Rudin remained entitled to statutory tolling of the federal clock. *See* 28 U.S.C. § 2244(d)(2).

Under *Sossa*, therefore, the inaccuracy of a state post-conviction court's extension of time may constitute an "extraordinary circumstance" making it "impossible" to file a petition on time, *see Gibbs*, 767 F.3d at 888 n.8 (citation omitted) (internal quotation marks omitted). Reasonable diligence did not require Rudin to foresee the error in the post-conviction court's timeliness ruling—especially where, as here, the state acquiesced in the extension of time. *See Gibbs*, 767 F.3d at 890–91 (To expect a petitioner to file a federal petition while her state proceedings are still pending "improperly raises the standard from 'reasonable' to 'maximum feasible' diligence." (quoting *Holland*, 560 U.S. at 653)).

---

responsibility for objecting to extensions of time, lest it "lie in wait . . . and only thereafter oppose a petition as untimely"); *see also Pliler* 542 U.S. at 235 (O'Connor, J., concurring) (providing the fifth vote for the majority and stating that "if the petitioner is affirmatively misled, either by the court *or by the State*, equitable tolling might well be appropriate" (emphasis added)). *Sossa*'s reasoning is explicitly intended to protect habeas petitioners who are "affirmatively misled," by courts or prosecutors, into believing their petitions have been timely filed.

Similarly, that *Sossa* dealt with the inaccurate extension of a federal limitations period, rather than a state limitations period, is also immaterial. Because the federal limitations period is automatically extended by a "properly filed" state limitations period, 28 U.S.C. § 2244(d)(2), a federal habeas petitioner may be entitled to equitable tolling where, as here, a state court erroneously extends the state limitations period and, by extension, the federal statutory limitations period.

The post-conviction court's timeliness finding was integrated into a final adjudication on December 31, 2008, when the state post-conviction relief court issued an order granting Rudin's state habeas petition.  Rudin therefore continued to benefit from the post-conviction court's finding of "extraordinary circumstances" until the Nevada Supreme Court reversed the grant of habeas relief on January 20, 2011.

Following the post-conviction court's initial finding of extraordinary circumstances, Rudin diligently pursued her then-"properly filed" state petition, and pursued her rights in federal court promptly after her state post-conviction proceedings were no longer pending.  *See* 28 U.S.C. § 2244(d)(2).  Unlike the petitioner in *Pace*, 544 U.S. at 410–11, who waited over seven years after the first state court decision found his petition untimely, Rudin waited only three months after the Nevada Supreme Court denied her relief—from January 20 to April 25, 2011—before filing her federal petition.  Rudin's failure to file a protective petition in federal court before her state petition was deemed untimely, in reliance first on the state post-conviction court's timeliness finding and later on that court's grant of relief, did not undermine Rudin's diligent pursuit of her rights.  *See Sossa*, 729 F.3d at 1229, 1237 (holding petitioner entitled to equitable tolling where he reasonably relied on a magistrate judge's orders extending his habeas filing deadline).

To the contrary, once the state post-conviction relief court excused Rudin's delay and deemed her petition "properly filed," Rudin remained entitled to statutory tolling in federal court.  *See Pace*, 544 U.S. at 417.  What's more, once the state post-conviction relief court granted Rudin's petition for habeas relief, Rudin could not have filed a protective federal habeas petition that would have been ripe for review.

Because Rudin prevailed in the state post-conviction court, she had no adverse ruling to challenge in a federal petition. Until the Nevada Supreme Court ruled, Rudin could not have known whether she would even need the intervention of the federal courts. Further federal proceedings would have been unnecessary unless and until the Nevada Supreme Court reversed the grant of relief. Unlike *Pace*, where the state courts repeatedly and consistently found petitioner's filings untimely, *Pace*, 544 U.S. at 410–11, no state court found Rudin's petition untimely until the Nevada Supreme Court entered judgment in January 2011. To require Rudin to have anticipated the Nevada Supreme Court's reversal by filing a protective petition in federal court would undermine the state post-conviction relief court's authority and would hold Rudin to a standard higher than reasonable diligence. *See Holland*, 560 U.S. at 653; *see also Gibbs*, 767 F.3d at 890–91.

\* \* \* \* \*

In sum, we conclude that Rudin has satisfied her burden to show that she is entitled to equitable tolling of the AEDPA limitations period until January 20, 2011, when the extraordinary circumstances making it impossible for her to file her federal petition on time were removed. *See Sossa*, 729 F.3d at 1229. After that date, AEDPA's one-year limitations period resumed, giving Rudin until September 9, 2011 to file her petition for federal habeas relief in the district court. Because Rudin filed her petition on April 25, 2011, within the tolled limitations period, we conclude that her petition was timely filed.

## III.  CONCLUSION

We **REVERSE** the district court's dismissal of Rudin's petition and **REMAND** for further proceedings consistent with this opinion.  For the reasons explained earlier, we **DENY** the State's motion to expand the record on appeal.

ADELMAN, District Judge, concurring:

I join the court's opinion in full.  I add only that a contrary result would require "the essentially pointless early filing of federal petitions," *Brooks v. Williams*, No. 2:10-cv-00045, 2011 WL 1457739, at *4 (D. Nev. Apr. 14, 2011), by prisoners who reasonably believe that their claims are properly pending, unexhausted, in state courts. *See Gibbs v. Legrand*, 767 F.3d 879, 890–91 (9th Cir. 2014); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (indicating that a prisoner's "reasonable confusion about whether a state filing would be timely" will ordinarily constitute good cause for a protective federal petition).

Requiring a protective filing would be particularly pointless in this case.  By August 2007, the federal habeas statute of limitations had long since run.  Unlike in *Pace*, where the prisoner could have filed a protective petition during the state post-conviction proceedings but before the federal statute ran, in the present case any protective petition Rudin might have filed after August 2007 would not have protected anything. *See, e.g.*, *Urrizaga v. Attorney General for Idaho*, No. CV-07-434, 2008 WL 1701735, at *3 (D. Idaho Apr. 9, 2008) (dismissing as untimely protective

petition filed after the statute of limitations had already expired).

---

O'SCANNLAIN, Circuit Judge, dissenting:

I joined Judge Murguia's original opinion for the Court, *Rudin v. Myles*, 766 F.3d 1161 (9th Cir. 2014), and regret that she has changed her view. She was right then, and I believe her original view is still correct. We are all agreed that Rudin is entitled to equitable tolling for the period between November 10, 2004 and August 22, 2007. *See* Majority at 26–29. During that time period, Rudin faced the extraordinary circumstance of being abandoned by her lawyer, Dayvid Figler, and diligently pursued her rights. *See Holland v. Florida*, 560 U.S. 631, 652–54 (2010). However, I cannot join the Court's new conclusion that Rudin is entitled to equitable tolling after August 22, 2007. In my view, the statute of limitations expired on April 11, 2008, over three years before she filed the instant petition.[1] Therefore, I respectfully dissent.

I

Under AEDPA, "equitable tolling is available 'only when extraordinary circumstances beyond a prisoner's control

---

[1] As the majority points out, Rudin is not entitled to equitable tolling between July 1, 2004—the date the AEDPA limitations period began to run—and November 10, 2004—the date Figler was appointed. *See* Majority at 26. Thus, as of August 23, 2007, Rudin had 232 days to file her federal petition. When she failed to file by April 11, 2008, the statute of limitations expired.

make it *impossible* to file a petition on time and the extraordinary circumstances were the *cause* of [the prisoner's] untimeliness.'" *Sossa v. Diaz*, 729 F.3d 1225, 1229 (9th Cir. 2013) (emphasis in original) (quoting *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010)). And even if a prisoner can show such extraordinary circumstances, she must also demonstrate that she pursued her rights with "reasonable diligence." *Holland*, 560 U.S. at 653. Indeed, "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Bills*, 628 F.3d at 1097. With these principles in mind, I turn to the relevant facts of this case.

## II

The majority asserts that the events of a state court status conference, which took place on August 22, 2007, "affirmatively misled" Rudin with respect to the deadlines for her federal habeas petition, Majority at 30, and therefore holds that Rudin's failure to file a timely federal petition may be excused. That conclusion, however, cannot be squared with the record or our precedents.

Even if the status conference were an "extraordinary circumstance" for AEDPA purposes, Rudin failed to act with reasonable diligence to protect her rights.[2] On August 22, 2007, Rudin, her attorney, the prosecution, and the state post-conviction court first became aware that Figler had never filed a post-conviction petition in state court. The court

---

[2] The majority conflates the concepts of statutory tolling and equitable tolling. Here, there is no dispute that Rudin is not entitled to statutory tolling. Thus, the majority's attempt to recast a losing statutory tolling argument in terms of equitable tolling is unpersuasive.

informed the parties, however, that due to the "extraordinary circumstances" of Figler's failure to file, it would "extend the one year deadline" to file a *state* habeas petition.[3]  Based on

---

[3] The majority says that such a ruling, "coupled with the state's *failure* to brief the timeliness question or move to dismiss Rudin's petition, 'affirmatively misled' Rudin."  Majority at 30 (emphasis added).  It is unclear, however, what authority supports the position that the state's *failure* to do something can amount to *affirmative* misleading.  The majority cites *Sossa* but *Sossa* actually suggests that a state, as an opposing party, has no authority to extend the statutory deadline established by Congress and therefore the state's actions (or, in this case, inactions) should not influence the petitioner.  *See Sossa*, 729 F.3d at 1235 n.9 (citing *Johnson v. Quarterman*, 483 F.3d 278 (5th Cir. 2007)).  In any event, the state's failure to object to the timeliness question applied to the *state* petition and thus would not affect Rudin's assessment of her *federal* petition.

For that same reason, the majority is incorrect in relying on *Sossa* to assert that the events of the August 22, 2007 conference were an extraordinary circumstance under AEDPA.  In *Sossa*, we held that when a prisoner is "affirmatively misled" by a federal magistrate judge regarding AEDPA's deadlines, the petitioner may be entitled to equitable tolling.  729 F.3d at 1232 (citing *Pliler v. Ford*, 542 U.S. 225, 235 (2004) (O'Connor, J., concurring)).  We determined that when a *federal* magistrate judge granted multiple extensions for the prisoner to file his *federal* habeas petition, such extensions effectively instructed the prisoner that if he followed the court's schedule, his *federal* filing would be deemed timely.  *Id.* at 1235.

In contrast, the majority here focuses on a *state* court's instruction regarding a *state* habeas petition.  Unlike *Sossa*, neither the parties nor the court discussed the federal petition.  Thus, rather than "affirmatively misle[ading]" Rudin in any way as to the AEDPA statute of limitations, if anything the status conference made Rudin aware that her state petition had not been properly filed and notified her that she should file a protective federal petition.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

these events, the majority makes the extraordinary leap that Rudin was excused from doing *anything* with respect to her *federal* petition for post-conviction relief for well over three years. *See* Majority at 30–31.

In fact, however, Rudin was under a duty to pursue her rights diligently. *See Holland*, 560 U.S. at 653. As the majority recognizes, as of the August 22, 2007 conference, Rudin and her new attorney, Christopher Oram, were "put on notice of the fact that nothing had been 'properly filed' in either state or federal court on her behalf." Majority at 30. With such knowledge, Rudin was not excused from taking action. Rather, she needed to act—with "reasonable diligence"—to preserve her right to challenge her conviction. *See Holland*, 560 U.S. at 653. Indeed, the Supreme Court has spelled out precisely what steps Rudin *should* have taken as soon as she and Oram were aware that there were potential timeliness issues with the state petition.

In *Pace v. DiGuglielmo*, the Court instructed that if a state prisoner is faced with uncertainty about whether her state post-conviction petition is timely, she should "fil[e] a 'protective' petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." 544 U.S. at 416; *see also Lakey v. Hickman*, 633 F.3d 782, 787 (9th Cir. 2011) ("*Pace*

---

Moreover, the majority does not explain what *inaccuracy* actually affirmatively misled Rudin. *Sossa* holds that "'[i]n order to show that he was affirmatively misled, [a habeas petitioner] need[s] to point to some inaccuracy in the district court's instructions' to him, not merely to his 'misunderstanding of accurate information.'" *Sossa*, 729 F.3d at 1233 (quoting *Ford*, 590 F.3d at 788). Whereas *Sossa* identified such an inaccuracy, *see id.*, Rudin—and the majority—cannot. *Sossa*, in short, does not govern here.

also explicitly advised state prisoners . . . to file a protective federal petition to avoid a possible timeliness bar."). Rudin not only failed to file such a protective petition, she failed to file anything in federal court over the next three years.

The majority's bare assertion that Rudin diligently pursued her rights does not make it so. That "Rudin waited only three months after the Nevada Supreme Court denied her relief—from January 20[, 2011] to April 25, 2011—before filing her federal petition" is completely beside the point. Majority at 32. Indeed, even if the August 22, 2007 conference were an "extraordinary circumstance" that would qualify for equitable tolling purposes, Rudin must still show she acted with reasonable diligence between August 22, 2007 and April 25, 2011. *See Pace*, 544 U.S. at 418. The majority fails to demonstrate—nor could it, in light of the record—how Rudin acted with reasonable diligence for the duration of the relevant time period.

The August 22, 2007 conference did not excuse Rudin from acting, but rather armed her with knowledge that should have spurred her to protect her rights. Rudin did not file anything in federal court until April 25, 2011, over three years and eight months later. "Such a delay does not demonstrate the diligence required for application of equitable tolling." *White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010). Thus, even if the status conference were an extraordinary circumstance, as the majority asserts, Rudin is not entitled to equitable tolling beyond that date.

III

For the foregoing reasons, I would affirm the judgment of the district court.