**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBERT ROY,
          *Petitioner-Appellant,*

          v.

ROBERT O. LAMPERT,
          *Respondent-Appellee.*

No. 04-35514

D.C. No.
CV-01-00861-CO

PHILLIP L. KEPHART,
          *Petitioner-Appellant,*

          v.

STAN CZERNIAK, Superintendent,
OSP,
          *Respondent-Appellee.*

No. 04-35626

D.C. No.
CV-01-00690-CO

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING/
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Oregon
John P. Cooney, Magistrate Judge, Presiding

Argued and Submitted
December 5, 2005—Portland, Oregon

Filed July 12, 2006
Amended September 22, 2006

11859

Before: James R. Browning, Dorothy W. Nelson, and Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge D.W. Nelson

## COUNSEL

Anthony D. Bernstein, Portland, Oregon, for the appellant.

Erin C. Lagesen, Assistant Attorney General, Salem, Oregon, for the appellee.

## ORDER

The opinion filed on July 12, 2006, slip opinion at 7625 and published at 455 F.3d 945 (9th Cir. 2006) is amended as follows:

Page 7641 of the slip opinion, last words:

> replace "[other things]" with "[circumstances other than petitioner's lack of diligence]"

Page 7643 of the slip opinion, last two sentences of the first full paragraph:

> replace: "Kephart was in fact told by his attorney that the statute of limitations did not expire until December of 1997, eight months after the actual expiration date. Kephart's attorney told him of the date he believed to be the expiration date for filing his habeas claim after Kephart was already in Arizona, and therefore after the point at which he could have confirmed or disproved what his attorney informed him about AEDPA." with "Likewise, Kephart asserted that he had had "no . . . notice of the AEDPA" either from the prison library or from any other source, and that he "was not able to gain knowledge of the one year limitation period for filing under [AEDPA]" until after he had filed his state post-conviction petition and had been returned to Oregon."

With these amendments, the members of the panel that decided this case voted unanimously to deny the petition for rehearing. Judge O'Scannlain voted to deny the petition for rehearing en banc. Judges Browning and Nelson recommended denial of the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on whether to rehear the matter en banc.

The petition for rehearing and the petition for rehearing en banc are denied. No further petitions for rehearing or rehearing en banc may be filed.

---

## OPINION

D.W. NELSON, Senior Circuit Judge:

Albert Roy and Phillip Kephart were both convicted of crimes in Oregon state court. The federal district court dismissed both of their federal habeas petitions as untimely because they were filed after the one-year statute of limitations period created by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). We consolidated their cases to answer a single question: Are Roy and Kephart entitled to an evidentiary hearing regarding their claim that the statute of limitations should be equitably tolled because they were transferred to an Arizona prison facility that, they allege, had a woefully deficient law library?

Because we decide that Roy and Kephart made sufficient allegations that they pursued their claims diligently and faced extraordinary circumstances once they were transferred to the Arizona prison facility, we remand this case to the district court to hold an evidentiary hearing.

# I

Albert Roy pleaded guilty to two counts of first-degree sodomy in Oregon state court and was convicted of those two counts. Roy appealed this conviction to the Oregon Court of Appeals, which affirmed his conviction on August 23, 1995. Roy did not appeal either to the Oregon Supreme Court or the United States Supreme Court. Accordingly, his direct appeal became final on November 1, 1995.

During this time, Roy was imprisoned in Oregon, but on February 7, 1996, Roy was transferred to a private prison facility in Florence, Arizona. Roy remained at this Arizona facility until April 25, 1997, at which time he was returned to the Oregon prison facility. On February 28, 1997, while he was at the Arizona facility, Roy filed a petition for habeas relief in the United States District Court for the District of Arizona, complaining of his transfer to Arizona and the difficulties it presented for his efforts to continue to pursue a challenge to his conviction. The Arizona court transferred this case to the Oregon district court on August 28, 1998, and the Oregon district court eventually dismissed the case.

On October 22, 1997, while his initial attempt to file a federal habeas petition was pending, and after Roy was transferred back to the Oregon prison facility, Roy filed a petition for post-conviction relief in Oregon state court. This petition was denied. The Oregon Court of Appeals affirmed this denial without an opinion, and the Oregon Supreme Court denied review. The decision of the Oregon Supreme Court became final on December 5, 2000. On May 23, 2001, Roy filed the federal habeas petition leading to this appeal.

Philip Kephart was also convicted in Oregon state court. Kephart was convicted of four counts of second-degree assault, one count of first-degree assault, one count of attempted first-degree assault, and two counts of criminal mistreatment. The Oregon Court of Appeals affirmed his con-

victions on direct appeal. Kephart petitioned for review in the Oregon Supreme Court, and the Oregon Supreme Court remanded his case to the Oregon Court of Appeals, which again affirmed his convictions. After the Oregon Court of Appeals affirmed his convictions on remand, Kephart did not appeal either to the Oregon Supreme Court or to the United States Supreme Court, and therefore his direct appeal became final on December 8, 1995.

Like Roy, Kephart was initially imprisoned in Oregon, and was later transferred to the correctional facility in Florence, Arizona (on February 7, 1996). On May 6, 1997, Kephart filed his petition for post-conviction relief in Oregon state court, and shortly thereafter, on July 14, 1997, Kephart was returned to an Oregon prison. Kephart's petition for state post-conviction relief was denied on July 17, 1997. The Oregon Court of Appeals affirmed this decision, and the Oregon Supreme Court declined to review the case, a decision that became final on October 23, 2000. Kephart then filed his federal habeas petition, the petition at issue in this appeal, on May 14, 2001.

In both Roy and Kephart's cases, the district court adopted the suggestions of the magistrate judge, and eventually dismissed the habeas petitions as untimely. This court granted a certificate of appealability on the issue of "whether the district court properly denied appellant's federal habeas corpus petition as untimely and denied equitable tolling without an evidentiary hearing despite conflicting affidavits on a factual issue."

## II

This court reviews de novo the district court's refusal to consider a petition for habeas corpus on grounds of tardiness. *Herbst v. Cook*, 260 F.3d 1039, 1042 (9th Cir. 2001). The decision by the district court to decline to order an evidentiary

hearing is reviewed for abuse of discretion. *Tapia v. Roe*, 189 F.3d 1052, 1056 (9th Cir. 1999).

## III

We first address whether the district court was correct to consider Roy and Kephart's federal petitions untimely, and we conclude that it was correct that their petitions were untimely.

**[1]** Pursuant to AEDPA, a prisoner may only file a federal habeas petition within one year from the conclusion of state direct review. 28 U.S.C. § 2244(d). This limitations period is tolled while a state prisoner is exhausting his claims in state court, *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir. 1999), and when a prisoner is trying to pursue state post-conviction remedies. *Id.* at 1006. However, the statute of limitations is not tolled "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed." *Id.* The statute of limitations period is also not tolled after state post-conviction proceedings are final and before federal habeas proceedings are initiated. *See* 28 U.S.C. § 2244(d)(2) (stating that the limitations period does not run while "a properly filed application for *State* post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" (emphasis added)).

While the AEDPA statute of limitations was running in this case between the end of state direct proceedings and state post-conviction proceedings, *as well as* between the time of the end of their state post-conviction appeals and the filing of their federal habeas petition, only the former time period was longer than the one-year statute of limitations established by AEDPA. In other words, if the time period while Roy and Kephart were in Arizona is equitably tolled, then Roy and Kephart will not have exceeded AEDPA's one-year statute of limitations.

**[2]** For both Roy and Kephart, the final dispositions of their direct appeals occurred before the effective date of AEDPA, and therefore they "were required to file any remaining federal petition for which they were otherwise eligible within one year of AEDPA's effective date, that is, by April 24, 1997." *Laws v. LaMarque*, 351 F.3d 919, 921 (9th Cir. 2003). Roy filed his petition for state post-conviction relief on October 22, 1997, a full 551 days after April 24, 1996, well beyond the one-year limitation mandated by AEDPA.

But for this time period, when Roy filed his federal habeas petition, he would have been within the statute of limitations period provided by AEDPA. Roy's state post-conviction appeal became final on January 3, 2001, and Roy filed his federal habeas petition on June 11, 2001, meaning that if the time between his state direct and post-conviction appeals had been equitably tolled, only the time between the termination of his state post conviction appeals and his federal habeas petition would have counted, and the clock would have run for only 159 days of the one-year statute of limitations provided by AEDPA.

The same is true of Kephart. Kephart's direct appeal also became final before the effective date of AEDPA, meaning that he also was "required to file any remaining federal petition for which [he was] otherwise eligible within one year of AEDPA's effective date, that is, by April 24, 1997." *Id.* at 921. Kephart filed his petition for state post-conviction relief on May 6, 1997, twelve days after April 24, 1997, the latest date he could have filed pursuant to AEDPA's one-year statute of limitations. If that period of time had been equitably tolled, Kephart also would have easily avoided AEDPA's one-year statute of limitations. Kephart's state post-conviction efforts became final on December 5, 2000, and on May 23, 2001, 169 days later and well within the one-year AEDPA time frame, Kephart filed his federal habeas petition.

**[3]** For these reasons, it is clear that, unless the time period when Roy and Kephart were in Arizona is equitably tolled,

Roy and Kephart filed their federal habeas petitions after the one-year statute of limitations provided by AEDPA. It is also clear that, if this time period is equitably tolled, Roy and Kephart filed their federal habeas petitions within the one-year statute of limitations provided by AEDPA.

## IV

**[4]** This court has recognized that the AEDPA statute of limitations provisions violated by Roy and Kephart can be subject to equitable tolling. *See Calderon v. United States Dist. Court (Beeler),* 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc). Equitable tolling is applicable only "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Beeler*, 128 F.3d at 1288 (internal quotation marks omitted). These extraordinary circumstances must be "the cause of [the] untimelieness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

**[5]** A habeas petitioner like Roy or Kephart should receive an evidentiary hearing when he makes "a good-faith *allegation that would, if true*, entitle him to equitable tolling." *Laws v. LaMarque*, 351 F.3d 919, 919 (9th Cir. 2003) (emphasis added). Roy and Kephart must demonstrate that they have "been pursuing [their] rights diligently . . . [and] that some extraordinary circumstance stood in [their] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

We therefore must first address whether Roy and Kephart made sufficient allegations of diligence to be entitled to an evidentiary hearing, and our precedents do not provide us much guidance regarding what diligence might mean in the AEDPA context.[1] Because both Roy and Kephart filed their

---

[1]This court has found equitable tolling potentially warranted in several AEDPA cases, but has focused almost exclusively on whether the relevant

habeas petitions *pro se*, allege specific efforts they pursued in order to file habeas petitions, and because both filed their claims within a reasonable period of time after they were transferred back to the Oregon facility and the extraordinary circumstances were removed, we find that Roy and Kephart presented sufficient evidence of their diligence to warrant an evidentiary hearing.

## A

**[6]** As an initial matter, we consider it highly relevant that Roy and Kephart were proceeding *pro se* until appointed counsel by the district court. We must "construe *pro se* habeas filings liberally." *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005); *see also Belgarde v. State of Montana*, 123 F.3d 1210, 1213 (9th Cir. 1997) ("We construe a pro se litigant's habeas petition with deference."). Because Roy and Kephart were proceeding *pro se*, we construe their allegations regarding diligence liberally.

**[7]** It is clear that *pro se* status, on its own, is not enough to warrant equitable tolling. *See, e.g.*, *Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). But we also here reaffirm the clear principle that, even though *pro se* status alone is not enough to warrant equitable tolling, it informs and colors the lens

---

"extraordinary circumstances" were present rather than whether the habeas petitioner had pursued their rights diligently. *See Laws v. LaMarque*, 351 F.3d 919, 919 (9th Cir. 2003); *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003); *Stillman v. LaMarque*, 319 F.3d 1199 (9th Cir. 2003); *Corjasso v. Ayers*, 278 F.3d 874 (9th Cir. 2002)*; Jorss v. Gomez*, 311 F.3d 1189 (9th Cir. 2001); *Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000), *Miles v. Prunty,* 187 F.3d 1104 (9th Cir. 1999)*; Calderon v. United States Dist. Court (Beeler),* 128 F.3d 1283 (9th Cir. 1997), *overruled on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc).

through which we view the filings, and whether these filings made sufficient allegations of diligence. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ("This court recognizes that it has a duty to ensure that pro se litigators do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements.").

**B**

Roy and Kephart made several allegations regarding their efforts to pursue their appeals diligently. After beginning efforts to file an appeal while in Arizona, Roy complained to Sheila Reed, the State of Oregon Governor's Advocate for Public Safety and the Corrections Ombudsman, that the Arizona facility did not have sufficient legal resources to enable Roy to pursue his claims. Roy in fact met with Reed in Arizona in person to complain about the law library.

[8] Roy also filed a federal lawsuit while in Arizona challenging the acceptability of the law library. It is true that, after this case was transferred to the district court in Oregon, that court dismissed Roy's lawsuit for lack of prosecution. This dismissal, though, does not make his filing of the lawsuit any less relevant in proving diligence. We are examining whether Roy had been diligent in his efforts to pursue his appeal *at the time his efforts* were being thwarted, namely while he was at the prison facility in Arizona. *Cf. Spitsyn*, 345 F.3d at 802 (" '[T]he person seeking equitable tolling [must demonstrate] reasonable diligence in attempting to file . . . *after* the extraordinary circumstances began." (emphasis added)).

Roy was transferred to the Arizona facility on February 7, 1996; he was transferred back to the Oregon facility on April 25, 1997. The judgment of the Oregon district court, though, was issued on September 2, 1998, well after the relevant period we are examining to see if Roy was diligent in pursuing his appeal. Moreover, the judgment by the Oregon district

court makes no reference to any specific time frame or actions revealing Roy's lack of diligence in pursuing his claims. Indeed, that decision simply states that it was construing Roy's case as a 42 U.S.C. § 1983 case, rather than a habeas case, and that therefore Roy had to provide an additional fee, an application to proceed *in forma pauperis*, or dismiss that case.

**[9]** At the time that decision was issued, Roy was already safely back in Oregon, and therefore the entire reason why Roy filed the lawsuit—to complain of his move to Arizona—was obviated. It is unsurprising, and not particularly relevant, then, that Roy (voluntarily) dismissed his lawsuit. His failure to pursue the lawsuit further does not demonstrate a lack of diligence in protesting the conditions in Arizona; it demonstrates that the lawsuit was no longer necessary because Roy was no longer in Arizona.

**[10]** Kephart also presented evidence of his efforts to file his claim while in Arizona. One of the affidavits in this case indicates that "Kephart was trying to file his state post conviction" claim and thus was present in the law library trying to do research. The fact that Kephart was able to discuss with specificity what precisely was present in the Arizona library also indicates he had visited the library at least on occasion. Kephart stated that the Arizona library "consisted of only three outdated legal books, which contained no information about the AEDPA."

**[11]** Since we have no cases on point from this circuit, we look to cases from other circuits for guidance. *See United States v. Tobeler*, 311 F.3d 1201, 1203 (9th Cir. 2002) (noting the "persuasive [value of] authority from other circuits"). In cases finding the absence of diligence in an equitable tolling context from our sister circuits, habeas petitioners demonstrated much less effort by the prisoners than Roy and Kephart demonstrated in this case.

In *Helton v. Sec'y for the Dept. of Corrections*, 259 F.3d 1310 (11th Cir. 2001), the court found that the prisoner had not exercised reasonable diligence because he never asserted that he "asked for the amendments to the federal habeas corpus statutes," *id*. at 1314, and was in fact not "even aware the library did not have these materials at the time he filed his section 2254 petition," *id*. at 1313; *see also id*. at 1314 ("Helton fails to state *any* independent efforts he made to determine whether the relevant limitations period began to run.") (emphasis added).

**[12]** In this case, by contrast, Kephart stated with specificity that the Arizona library "consisted of only three outdated legal books, which contained no information about AEDPA." Roy filed a federal lawsuit indicating that the Arizona library did not have "an Oregon trained legal assistant and a current adequate Oregon law library."**²**

Likewise, in *Miller v. Marr,* 141 F.3d 976 (10th Cir. 1998), the habeas petitioner's statements about law library inadequacies were less specific than those made here by Roy and Kephart. *Id*. ("It is not enough to say that the Minnesota facility lacked all relevant statutes and case law or that the procedure to request specific materials was inadequate."); *see also id*. at 978 ("In the final analysis, however, Mr. Miller has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims.").

---

**²**Of course, we do not hold that a federal Arizona prison facility must employ an Oregon-trained legal assistant, nor do we hold that the lack of such a legal assistant could alone satisfy the "extraordinary circumstance" requirement for equitable tolling. Nevertheless, the fact that Roy timely filed a lawsuit alleging deficiencies in the Arizona facility is evidence of his diligence in trying to secure his rights. We leave for the district court to consider, after an evidentiary hearing, whether any lack of personnel or materials in the Arizona facility constituted a sufficiently "extraordinary circumstance" such that Roy and Kephart could not timely file their petitions.

## C

**[13]** In addition to the specific efforts Roy and Kephart allege that they made to pursue their claims, we also consider it important that Roy and Kephart pursued their claims within a reasonable period of time *before* the external impediment[3] —in this case, the transfer to Arizona—came into existence. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3rd Cir. 2005) ("This obligation [to act diligently] does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well.").

In *Miller*, in a context similar to this case, one of our sister circuits found that the habeas petitioner did not exercise reasonable diligence because, in addition to the absence of specific references to his efforts, the habeas petitioner waited a long time before filing his petition, in that case more than a year before the extraordinary circumstance being argued as the cause of equitable tolling was created. *Miller*, 141 F.3d at 978. Similarly, in *LaCava,* twenty-one months elapsed before the circumstances that the prisoner argued created equitable tolling arose. *LaCava*, 398 F.3d at 272.

**[14]** In this case, Roy's direct appeal became final on January 30, 1996, and barely one week ensued before, on February 7, 1996, Roy was transferred to Arizona. Kephart's direct appeal became final on March 7, 1996, after he was trans-

---

[3]We note that AEDPA itself provides that the statute of limitations "shall run from the . . . date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed[.]" 28 U.S.C. § 2244(d)(1)(B). Because we address the conditions of the Arizona prison library as a possible "impediment" as part of our equitable tolling argument, we need not address the identical statutory tolling arguments. *See Gatson v. Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2005) ("[T]he district court's rejection of equitable tolling . . . constitutes an implicit rejection of [the] impediment argument.").

ferred to Arizona on February 7, 1996.[4] Thus, Roy had just three months in which to file a state post-conviction petition after his direct appeal became final and before he was transferred to Arizona, and Kephart had no time at all.[5]

## D

[15] We decline to adopt the district court's test and require that Roy and Kephart "indicate . . . when [they] asked for assistance none was provided . . . [and] provide the dates on which [they] attempted to obtain information from the Arizona facility." The purpose of requiring habeas petitioners to demonstrate diligence in order to be entitled to an evidentiary hearing regarding equitable tolling is to ensure that the extraordinary circumstances faced by petitioners like Roy and Kephart—and not their lack of diligence—were the cause of

---

[4]The evidence supporting Roy and Kephart's diligence is not affected if we measure their diligence based not on when their direct appeals became final but rather based on when the final *decisions or dispositions* of a court occurred. Roy's final effort at direct appeal was denied by the Oregon Supreme Court on August 23, 1995, approximately five months before he was transferred to Arizona, and Kephart's last judicial decision regarding his direct appeal was on October 11, 1995, less than four months before he was transferred to Arizona.

[5]In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court decided that a habeas petitioner was not entitled to equitable tolling because "not only did petitioner sit on his rights for years *before* he filed his [state post-conviction] petition, but he also sat on them for **five more months** *after* his [state post-conviction] proceedings became final before deciding to seek relief in federal court." *Id.* at 419 (emphasis and boldface added). It is true that, in this case, after their state post-conviction appeals were final and before they filed their federal habeas petitions, Roy waited about six months and Kephart around five months. However, the Supreme Court refused to recognize an equitable tolling claim in *Pace* not just because of the delay between the state post-conviction and federal habeas stages, but also because of the earlier, more egregious delays. *Id.* ("[P]etitioner waited years, without any valid justification, to assert these claims in his [post-conviction petition]. Had petitioner advanced his claims within a reasonable time of their availability, he would not now be facing any time problem.") (footnote omitted).

the tardiness of their federal habeas petitions. *Spitsyn v. Moore*, 345 F.3d 796, 802 (9th Cir. 2003) (" '[I]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file, after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken.' " (*quoting Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000))).

**[16]** Since this is the reason for showing diligence, then habeas petitioners should not have to allege specific dates and times of library visits. Of course, the district court is correct that specific dates may be highly probative when petitioners attempt to show that they acted diligently in securing their rights. However, if the petitioners can allege facts showing that extraordinary circumstances—and not a lack of diligence —caused the failure to file, there is no need to require specific dates before holding an evidentiary hearing.

**[17]** By alleging what they did to pursue their claims and complain about their situations, and alleging that they did so before AEDPA's statute of limitations expired, Roy and Kephart have done enough to demonstrate that they were not the cause of their tardiness, and that they would have filed on time but for their transfer to Arizona. This is particularly so because we have earlier decided in the AEDPA equitable tolling context that "[o]ne event may have multiple causes. If [petitioner's] late filing was caused *both* by . . . [circumstances other than petitioner's lack of diligence] and by prison officials' misconduct, [petitioner] still is entitled to equitable tolling, since prison officials' misconduct proximately caused the late filing." *Stillman v. Lamarque*, 319 F.3d 1199, 1203 (9th Cir. 2003).

## IV

### A

**[18]** Given that Roy and Kephart have made sufficient allegations regarding their diligence to entitle them to an eviden-

tiary hearing, they must next demonstrate that "extraordinary circumstances beyond [their] control make it impossible to file a petition on time." *Beeler*, 128 F.3d at 1288. Whether Roy and Kephart have demonstrated extraordinary circumstances is clearly governed by a decision from this court directly on point, *Whalem/Hunt v. Early*, 233 F.3d at 1148, which compels a finding that Roy and Kephart made sufficient allegations of extraordinary circumstances.

**[19]** In *Whalem/Hunt*, the en banc court remanded to the district court for an evidentiary hearing related to an equitable tolling argument for two primary reasons, both of which apply in this case. First of all, "the law library of the prison in which [the prisoner] is incarcerated did not have legal materials describing AEDPA until June 1998." *Id*. at 1147. The absence of AEDPA in the law library, when combined with the second relevant fact that the prisoner in *Whalem/Hunt* "had no knowledge of any limitations period," *id*., led to the decision by the en banc court to remand for an evidentiary hearing.

**[20]** In this case, Roy and Kephart made similar "allegation[s] that would, if true, entitle [them] to equitable tolling." *Laws*, 351 F.3d at 919. First, both alleged that the Arizona library did not have the requisite AEDPA materials. Roy stated that at the prison facility in Arizona "there was no law library available" and therefore he did not have access to AEDPA. Kephart stated that the Arizona "library . . . contained no information about the AEDPA."

In *Whalem/Hunt*, besides the issue of AEDPA availability, the court considered it important for the "extraordinary circumstances" determination that the prisoner stated that he "had no knowledge of any limitations period prior to December 1998." *Whalem/Hunt,* 233 F.3d at 1147 (internal quotation marks omitted). In this case, Roy indicated that similarly he was "not made aware of . . . the AEDPA." Likewise, Kephart asserted that he had had "no . . . notice of the AEDPA" either from the prison library or from any other source, and that he

"was not able to gain knowledge of the one year limitation period for filing under [AEDPA]" until after he had filed his state post-conviction petition and had been returned to Oregon.

In addition to the two AEDPA-related reasons the *Whalem/Hunt* court remanded for an evidentiary hearing there are also other reasons present in *Whalem/Hunt* that suggest that Roy and Kephart may have faced extraordinary circumstances. While there was no evidence in *Whalem/Hunt* about the general condition of the library beyond the availability of AEDPA materials, in this case there was evidence suggesting that the problems related to AEDPA materials were part of a series of problems with the Arizona law library.[6] Kephart testified that he "had no access to current Oregon or federal law. The CCA library consisted of only three outdated legal books, which contained no information about the AEDPA . . . . At no time during my imprisonment was there information provided . . . explaining any procedure to obtain legal information relevant to Oregon prisoners."

Other affidavits also suggest that Roy and Kephart did not have access to much of a law library in Arizona. Douglas Phaneuf, an inmate working as a law librarian in Arizona, stated that "there was no Oregon case law." Phaneuf also stated that while "[i]t is possible that [correspondence with lawyer] assistance was available . . . I was not aware of it." Thomas J. Jensen, another inmate working as a librarian at the Arizona prison facility, stated that he did "not recall there being any meaningful federal material in the Florence library even after it had become established and obtained some books."

---

[6]Of course, in order to assess whether Roy and Kephart have stated a claim for an evidentiary hearing, we must consider their "good-faith allegation[s that] would, if true, entitle [them] to equitable tolling." *Laws,* 351 F.3d at 919 (emphasis added). We recognize that there is a dispute about the condition of the Arizona prison law library, which is why we believe the district court should have ordered an evidentiary hearing.

## B

While this evidence might suggest that this court could simply find (on its own and without a remand) that Roy and Kephart were entitled to equitable tolling, and that an evidentiary hearing is not necessary, we decline to follow that course of action. There remain significant conflicts among the affidavits on material issues, and "[i]n a *habeas* case, when there are only conflicting affidavits regarding the facts underlying the issue of cause, the district court must hold an evidentiary hearing." *Buffalo v. Sunn*, 854 F.2d 1159, 1165 (9th Cir. 1988); *see also id.* ("A district court conducting federal habeas review should not ordinarily attempt to resolve contested issues of fact based on affidavits alone unless there is other evidence in the record dispositive of the issue or unless the state court has made the relevant factual findings.").

For instance, regarding the question of the availability of AEDPA in the Arizona prison law library, there were conflicting statements. Kephart stated that in Arizona there were "no legal materials which described the AEDPA, and no other notice of the AEDPA." Phaneuf stated that he did "not know if there was in fact federal material." Jensen stated that there were never "any meaningful federal materials in the Florence library." By contrast, Martinez, also a prison law-library clerk, stated that AEDPA had "probably arrived" in 1996. Martinez also testified that information about the AEDPA statute of limitations had been posted, and the Federal Public Defenders had provided prisoners with that information as well. A representative from West Publishing indicated that the relevant portions of AEDPA were in fact sent to the Arizona prison facility.

There is also much in dispute regarding other aspects of the Arizona prison law library. While Trent Axen, the Library Coordinator at the Oregon State Penitentiary, testified about an elaborate series of materials available at the library in Arizona, and about a correspondence system permitting prisoners

to request materials not in Arizona, the affidavits submitted by the inmates in Arizona disagree with this on almost every level.[7]

**V**

**[21]** Because we find that Roy and Kephart have made sufficient allegations regarding their diligence and the extraordinary circumstances they faced while at the Arizona prison, we remand to the district court for an evidentiary hearing on their equitable tolling claim.

**PETITION GRANTED AND REMANDED.**

---

[7]Because we recognize that there are many conflicts among many of the affidavits on many issues, we need not address Roy and Kephart's claims that we should disallow some of the affidavits because they are not based on personal knowledge, pursuant to Federal Rule of Evidence 602. We need not decide which specific affidavits satisfy that Rule's requirements because we decide that there are so many conflicts that the district court should order an evidentiary hearing to gather new evidence and further assess the comments made in the affidavits.