**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

WILLIE ULYSESS GRANT,
*Petitioner-Appellant*,

v.

GARY SWARTHOUT, Warden;
XAVIER BECERRA, Attorney General,
*Respondents-Appellees.*

No. 13-55584

D.C. No.
3:11-cv-03015-
JAH-JMA

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted December 6, 2016
Pasadena, California

Filed July 7, 2017

Before: Stephen Reinhardt, A. Wallace Tashima,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Reinhardt

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's order dismissing as untimely California state prisoner Willie Ulysses Grant's federal habeas corpus petition, and remanded for further proceedings, in a case involving a prisoner's right to equitable tolling for the period during which he was prevented from completing his federal habeas petition by an extraordinary circumstance.

The panel held that a petitioner is entitled to use the full one-year statute-of-limitations period for the filing of his state and federal habeas petitions and that he need not anticipate the occurrence of circumstances that would otherwise deprive him of the full 365 days that Congress afforded him for the preparation and filing of his petitions. The panel therefore held that it was improper for the district court to fault the petitioner for filing his state petition for postconviction relief late in the statute-of-limitations period in reliance on his having a full year to file both his state and federal petitions, as promised by AEDPA.

The panel held that Grant exercised reasonable diligence during the 20-odd day duration of an extraordinary circumstance, where he requested from the prison trust office, on the day he received notice of the California Supreme Court's denial of his state postconviction petition, the prison account certificate required to file a federal habeas petition *in*

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*forma pauperis* and filed a second request when he did not hear back from prison officials for two weeks. Because it is obvious that Grant was diligent after he received the prison account certificate, the panel did not resolve whether a petitioner needs to prove that he was diligent after the extraordinary circumstance has ended.

The panel disagreed with the state that Grant did not experience an extraordinary circumstance sufficient to justify tolling. The panel wrote that where a prisoner is dependent on prison officials to complete a task necessary to file a federal habeas petition and the staff fails to do so promptly, this constitutes an extraordinary circumstance.

The panel concluded that Grant is entitled to equitable tolling from the time he requested the prison account certificate until he received the certificate, and that his petition was therefore timely.

---

## COUNSEL

Tony Faryar Farmani (argued), Farmani APLC, San Diego, California, for Petitioner-Appellant.

Kevin Vienna (argued) and Mathew Mulford, Deputy Attorneys General; Julie L. Garland, Senior Assistant Attorney General; Office of the Attorney General, San Diego, California; for Respondents-Appellees.

---

## OPINION

REINHARDT, Circuit Judge:

This case involves a prisoner's right to equitable tolling for the period during which he was prevented from completing his federal petition for habeas corpus by an "extraordinary circumstance." If equitable tolling applies, his habeas petition is timely. If it doesn't, he will likely spend the rest of his life in prison.

## FACTS

Willie Ulysess Grant was found guilty of committing first-degree murder, including an enhancement for personally using a firearm in the commission of the crime, on December 14, 2006. He was sentenced to two consecutive terms of twenty-five years to life. The California Court of Appeal affirmed his sentence on September 16, 2008. The California Supreme Court denied his petition for review on December 10, 2008. Grant timely filed a petition for certiorari, which was denied by the U.S. Supreme Court on October 5, 2009. On that date, the one-year statute of limitations for filing a federal habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") began to run. 28 U.S.C. § 2244(d)(1). Grant was also required to file any petition for state collateral review within that one-year period, but the running of the period was statutorily tolled while the state courts were actively processing his petitions.

On September 25, 2010, 354 days after his petition for certiorari was denied, Grant constructively filed a pro se petition for state postconviction relief with the San Diego County Superior Court. This filing commenced the statutory

tolling of the AEDPA statute of limitations. *Id.* § 2244(d)(2). Grant's state postconviction relief efforts continued until November 16, 2011, when the California Supreme Court denied his state habeas petition. This decision ended the period of statutory tolling.[1]

Grant received notice that his state petition had been denied five days later, on November 21, 2011. At that time, there were seven days remaining in Grant's one-year filing period under AEDPA.[2] Grant then "immediately requested a 'prison account certificate' from the prison trust office," on November 21. This certificate was required in order to file a federal habeas petition *in forma pauperis*. *See* Rules Governing Section 2254 Cases in the United States District Courts, R. 3(a)(2) (requiring a motion, affidavit, and "certificate from the warden or other appropriate officer of the place of confinement showing the amount of money" in the petitioner's prison account in order to proceed *in forma pauperis*). The certificate was issued to Grant's correction counselor on December 2, 2011. According to Grant, this delay "was because of the Thanksgiving holiday weekend." Grant finally received the certificate from his counselor on

---

[1] Neither party disputes that the entire period from September 25, 2010 to November 16, 2011 was tolled by statute.

[2] Because November 27, 2011 fell on a Sunday, Grant's petition was actually due the next day, November 28, 2011. *See* Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day [of a filing deadline] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Grant therefore had seven days remaining although this gave him a 366-day period in which to file.

December 19.**³**  Grant constructively filed his federal pro se petition for a writ of habeas corpus on that same day.  Along with his petition, he filed the required declaration and prison certificate to proceed *in forma pauperis*.  The state moved to dismiss the petition, arguing that it was untimely under AEDPA's one-year statute of limitations.  Grant contends that the period of time between November 21, when he requested the prison account certificate, and December 19, the date on which he received it, was equitably tolled.  If he is correct, his federal habeas petition was timely filed.

The district court adopted the report and recommendation of the magistrate judge, which recommended that the petition be dismissed as untimely.  It held that Grant was not entitled to equitable tolling because he had not shown that he was diligent throughout the entire 354 days prior to his filing of his state petition for postconviction relief and that such a showing was necessary to warrant equitable tolling.**⁴**

---

**³** The date on which Grant received the certificate was disputed below, with Grant asserting that he received it on December 19 and the state arguing that he received it on December 2.  However, the state did not argue in its briefs on appeal that Grant received his prison account certificate on December 2, and it represented at oral argument that it was not disputing that Grant received the prison account certificate on December 19.  Therefore, we accept as true Grant's assertion that he received the prison account certificate on December 19.

**⁴** Grant argued both before the district court and before this court that he was entitled to additional equitable tolling during some other portions of either the period before he filed his state petition for postconviction relief or the period after his state petition was denied.  The district court made determinations specific to each of Grant's other arguments in concluding that he was not entitled to equitable tolling.  Because we conclude that Grant is entitled to equitable tolling for the period during which he waited to receive his prison account certificate from prison

## DISCUSSION

Under AEDPA, state prisoners have a one-year statutory period to file a federal application for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). This period is in effect a statute of limitations that commences on the latest of four dates designated by statute:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

officials, and his federal habeas petition was therefore timely, we do not reach any of these additional claims.

*Id.* Here, the applicable period commenced as provided in paragraph (A). The statutory period is tolled ("statutory tolling") while the prisoner pursues state postconviction relief. Specifically, the one-year statute of limitations is statutorily tolled from the time a state collateral challenge is filed until the state postconviction proceedings are final. *See Roy v. Lampert*, 465 F.3d 964, 968 (9th Cir. 2006). The statute of limitations is *not* tolled, however, "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed." *Id.* (alteration in original) (citation omitted).

It is well established that a prisoner who files his federal petition for writ of habeas corpus after AEDPA's one-year statute of limitations has expired may be entitled to equitable tolling. *Florida v. Holland*, 560 U.S. 631, 649 (2010). If a prisoner can demonstrate that he is entitled to equitable tolling for a certain period of time, that period will be subtracted from the total number of days that have passed. If, after those days are subtracted, less than 365 days have passed, the prisoner's petition for habeas corpus will be accepted as timely. The grounds for equitable tolling "are highly fact-dependent." *Sossa v. Diaz*, 729 F.3d 1225, 1237 (9th Cir. 2013) (citation omitted). They do require, however, the occurrence of what we label an "extraordinary circumstance." *Miles v. Prunty*, 187 F.3d 1104, (9th Cir. 1999) ("We will permit equitable tolling of AEDPA's limitations period 'only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.'" (quoting *Calderon v. U.S. Dist. Court*, 163 F.3d 530, 541 (9th Cir. 1998))). We have said, however, that we do not require *actual* impossibility; rather, equitable tolling is appropriate where "it would have technically been possible for a prisoner to file a petition, but a prisoner would

have likely been unable to do so." *Gibbs v. Legrand*, 767 F.3d 879, 888 (9th Cir. 2014) (quoting *Harris v. Carter*, 515 F.3d 1051, 1054 n.5 (9th Cir. 2008)). "At bottom, the purpose of equitable tolling is to 'soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having [her] day in court.'" *Rudin v. Myles*, 781 F.3d 1043, 1055 (9th Cir. 2014) (alteration in original) (citation omitted).

## I.

### A.

The specific question in this case is whether, when a petitioner would otherwise be able to file a timely petition for federal habeas corpus but an extraordinary circumstance occurs that prevents timely filing, the court may deny equitable tolling solely because it believes that by scheduling his work differently prior to the unanticipated occurrence, the petitioner would have been able to file his federal petition earlier, specifically within in the one-year statute-of-limitations period. Put differently, the question is whether equitable tolling may be denied because a court decides that the prisoner acted unreasonably by failing to work diligently on his case throughout the entire portion of the one-year statute-of-limitations period that preceded the occurrence of the "extraordinary circumstance"?

The seminal case on this issue is *Valverde v. Stinson*, 224 F.3d 129 (2d Cir. 2000). In that case, the Second Circuit held that a federal habeas petitioner was "not ineligible for equitable tolling simply because he waited until late in the limitations period to file his habeas petition." *Id.* at 136. The court explained that a petitioner "would have acted

reasonably by filing his petition *any time* during the applicable one-year period of limitations." *Id.* (emphasis added). It then reasoned that a petitioner "should not be faulted . . . for failing to file early or to take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that occur later in that period." *Id.*; *see also United States v. Gabaldon*, 522 F.3d 1121, 1126 (10th Cir. 2008) ("[To hold] that [a habeas petitioner] could and should have filed . . . before his documents were seized would not only arbitrarily shorten his limitations period, but also would unduly penalize him for making the effort to research his claims thoroughly and set forth his arguments in as compelling a manner as possible."). We agree with the Second Circuit that a petitioner is entitled to use the full one-year statute-of-limitations period for the filing of his state and federal habeas petitions and that he need not anticipate the occurrence of circumstances that would otherwise deprive him of the full 365 days that Congress afforded him for the preparation and filing of his petitions. We therefore hold that it was improper for the district court to fault the petitioner for filing his state petition for postconviction relief late in the statute-of-limitations period in reliance on his having a full year to file both his state and federal petitions, as promised by AEDPA.

Our conclusion follows from the commonsense proposition that when Congress enacts a statute of limitations for filings (as it did in AEDPA), it has deemed that period as a reasonable period of time in which to complete the requisite filings, and it is therefore *inherently* reasonable for a petitioner to rely on that statute of limitations and to plan on filing at any point within that period. As a result, courts may not retroactively assess a petitioner's actions in order to judge

what a petitioner *could have* done during the running of the statutory period prior to the occurrence of an unexpected external impediment which tolls the running of the statute. *See, e.g.*, *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1196 (9th Cir. 2001) (en banc) ("[A] court arguably usurps congressional authority when it tolls and then rewrites the statute of limitations by substituting its own view of how much time a plaintiff reasonably needed to file suit.").

The Supreme Court recently considered a related issue involving the relationship between a statute of limitations and equitable relief in *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017). In that case, it held that the equitable defense of laches was unavailable where a copyright plaintiff filed its claim within the statutorily prescribed statute of limitations. The Court reasoned that when Congress has determined that a patent owner is entitled to three years in which to file a claim, allowing courts to shorten that period by deeming a plaintiff as having waited too long to file a claim "would give judges a 'legislation-overriding' role that is beyond the Judiciary's power." *Id.* at 960. The Court explicitly held that judges could not override the statute of limitations period *even* where there were concerns that a plaintiff might try to "game" the system, such as by "wait[ing] until an infringing product has become successful before suing for infringement." *Id.* at 961 n.4 ("The dissent's argument implies that, insofar as the lack of a laches defense could produce policy outcomes judges deem undesirable, there is a 'gap' for laches to fill, notwithstanding the presence of a statute of limitations. That is precisely the kind of 'legislation-overriding' judicial role that *Petrella* rightly disclaimed."). In addition, the Court recognized that "[i]f the plaintiff has done only what she is permitted to do by statute, . . . the basis for barring the

plaintiff seems to have disappeared." *Id.* at 961 (quoting 1 Dan Dobbs, *Law of Remedies* § 2.4(4), at 108 (2d ed. 1993)).

This rationale applies with equal force in the present case. Congress has determined that state prisoners are entitled to one full year from the date on which their conviction becomes final[5] before their federal petition for habeas corpus must be filed, and the Supreme Court has rightly held that equitable tolling is an available remedy to ensure that prisoners are afforded their full statutory entitlement. Equitable tolling may not be applied in a manner that would serve to deprive prisoners of their right to use the entire statutory period in the way they deem fit. One year is not an overly long period in which to file both a state petition for postconviction relief and a federal habeas petition. From the myriad orders dismissing such petitions as untimely, one might even conclude that the period is too short to allow many prisoners, especially the vast majority who are acting pro se, to investigate, research, and fully prepare such complex and lengthy legal documents. To use equitable principles to in effect shorten the already-short statutory period available to all prisoners by requiring them to anticipate extraordinary circumstances and to perform the necessary legal work in a shorter period of time than the statute requires would deprive them of the availability of the full statute-of-limitations period and would compel them to meet the additional judge-made requirement

---

[5] This can occur either through completion of direct review or the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). The statute of limitations may begin to run from several other dates, *see id.* § 2244(d)(1)(B)–(D), but the most common date on which the statute of limitations begins running is the date on which the judgment becomes final.

of performing their legal research and writing on a schedule deemed appropriate in hindsight by a judge.

In holding that AEDPA's statute of limitations period is subject to equitable tolling, the Supreme Court recognized that habeas corpus has always been governed by equitable principles. *See Holland*, 560 U.S. at 647 ("AEDPA's subject matter, habeas corpus, pertains to an area of the law where equity finds a comfortable home."); *see also id.* at 649 ("When Congress codified new rules governing this previously judicially managed area of law, it did so without losing sight of the fact that the 'writ of habeas corpus plays a vital role in protecting constitutional rights.'"). The Court also recognized that "AEDPA's limitations period is not particularly long," and equitable tolling would therefore be necessary for prisoners who experienced unforseen obstacles. *See id.* at 647.

As we have reiterated on numerous occasions, the purpose of equitable tolling is to "prevent the unjust technical forfeiture of causes of action." *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004) (quoting *Lantzy v. Centex Homes*, 73 P.3d 517, 523 (Cal. 2003)). That is, equitable tolling entitles a prisoner who experiences an unexpected hardship to *additional* time when he would otherwise be denied his day in court. In applying these equitable considerations, we must bear in mind that prisoners are generally pro se and are not only without the resources to hire counsel but also most often without the knowledge or ability to prepare timely and adequate habeas petitions by themselves. Allowing courts to forfeit a petitioner's right to equitable tolling because in the court's judgment the prisoner could have filed earlier in the statute-of-limitations period had he scheduled his legal work

differently would undermine the equitable principles that underlie the use of equitable tolling in habeas cases.

The added judicial condition imposes an additional requirement on the right to use a full 365 days and does so in the name of equity, although equitable relief – here, equitable tolling – is designed to achieve the precisely opposite purpose: to ensure that the prisoner will truly have his full statutory period available for the performance of his work.

No opinion of this court or of the Supreme Court has ever upheld the denial of equitable tolling to a prisoner on the ground that he had not used the portion of the one-year statute-of-limitations period that preceded the event justifying tolling in a reasonable manner. Quite the contrary, we have on several occasions granted equitable tolling to petitioners where the triggering event occurred with only days remaining in the one-year filing period. *See, e.g.*, *Miles*, 187 F.3d at 1107 (petitioner was entitled to equitable tolling although he requested a check and submitted his federal petition with only five days remaining in AEDPA's one-year statute of limitations); *Stillman v. LaMarque*, 319 F.3d 1199, 1202–03 (9th Cir. 2003) (petitioner was entitled to equitable tolling when his lawyer submitted his federal petition to officials to have petitioner sign with only one day left in the AEDPA filing period); *see also Dickershaid v. Martel*, 648 F. App'x 618, 621 (9th Cir. 2016) (petitioner was entitled to equitable tolling when prison officials confiscated his legal materials with only two days remaining in one-year statute-of-limitations period). In none of these cases did we examine what steps the petitioner took toward preparing his petition in the portion of the statute-of-limitations period that transpired before the extraordinary circumstance triggered equitable tolling. Nor did we even suggest in any of those cases that

failing to have worked on, or failing to work sufficiently diligently on, habeas petitions during a portion of the pre-extraordinary circumstances period might prevent the petitioner from receiving equitable relief.

B.

On appeal, the state relies principally on two separate arguments. First, it restates the district court's analysis that a petitioner must show that he was diligent not only during the existence of an extraordinary circumstance, but also before the extraordinary circumstance occurred.[6] Second, the state argues that prison officials' delay in providing the petitioner with his prison account certificate was not an extraordinary circumstance.

In support of its first argument, the state asserts that *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), held that courts may penalize a habeas petitioner for filing his state collateral petition toward the end of the statute-of-limitations period if the court believes that the prisoner could have filed this petition earlier had he worked harder. However, *Pace* was a case in which the Court denied equitable tolling based on the petitioner's failure to pursue state postcollateral relief for four years after his direct appeal was concluded. *Id.* at 419 ("Yet petitioner waited [over four] years, without any valid justification, to assert these claims in his November 27, 1996, [state] petition.").

---

[6] We have no quarrel with the first half of the state's thesis, and we conclude here that the petitioner exercised reasonable diligence during the duration of the extraordinary circumstance in this case. *See infra* pages 18–20.

*Pace* was the product of a problem common before the passage of AEDPA. Certain states did not have time requirements governing the filing of petitions for postconviction relief, and thus did not ensure that such relief was pursued within a reasonable period of time. As a result, prior to AEDPA prisoners could sometimes wait years before filing an initial state petition, and federal habeas petitions could be delayed accordingly. *See, e.g.*, *Pace*, 544 U.S. at 410–11 (recognizing that Pennsylvania law "was amended in 1995 to include, for the first time, a statute of limitations for state postconviction petitions"); *Carey v. Saffold*, 536 U.S. 214, 221 (2002) ("California's collateral review system differs from that of other States in that it . . . . determines the timeliness of each filing according to a 'reasonableness' standard."). In California, where each state postcollateral petition is filed separately in each level of the state courts, this delay would be compounded as prisoners could wait years before proceeding to the next step of their collateral appeal. *See Carey*, 536 U.S. at 221. Prisoners could ultimately challenge their convictions in federal court upwards of a decade after they were originally convicted. *See, e.g.*, *Pace*, 544 U.S. at 410–11 (thirteen years passed between petitioner's guilty plea in 1986 and the filing of his federal petition in 1999). Under such circumstances, courts found it necessary to inquire whether petitioners had sat on their claims for years before seeking relief and then asserted that they were further entitled to equitable tolling. The problem identified in *Pace* has been almost entirely solved by the passage of AEDPA and its establishment of a one-year statute of limitations in which to both exhaust state remedies and file a federal petition for habeas corpus.[7] Because the

---

[7] During this period, statutory tolling is applicable while state remedies are pursued in the state courts.

AEDPA statute of limitations runs from the date that a prisoner's conviction becomes final, in order to be eligible to file a federal petition for habeas corpus, petitioners *must* file their state petitions for postcollateral relief within a year regardless of whether the state has specifically set a statute of limitations for state postcollateral petitions.

Although we have never denied a prisoner relief for failing to act diligently during the portion of the statute-of-limitations period that preceded the occurrence of a triggering event, there has been some suggestion in two of our cases that diligence prior to an extraordinary circumstance may be a "relevant" factor. *See Gibbs*, 767 F.3d at 892. First, as explained above, examination of diligence prior to an unexpected circumstance was important only before AEDPA and only in cases in which petitioners waited an unreasonable period of time before pursuing postconviction relief. Second, neither of these cases stands for the proposition that a petitioner lacks the requisite diligence because he failed to act expeditiously during the portion of the one-year statute-of-limitations period that preceded the occurrence of the extraordinary circumstance.[8]

---

[8] In *Roy v. Lampert*, we noted among other observations that the habeas petitioners to whom we granted equitable tolling had "pursued their claims within a reasonable period of time *before* the external impediment." 465 F.3d at 972. *Roy* concerned the petitions of two prisoners: one prisoner had one week between his conviction becoming final and the occurrence of the external impediment, and the other prisoner's conviction became final *after* the extraordinary circumstance had begun. *Id.* Thus, although *Roy* referred to time within the statutory period, it did not comment upon whether such a period could ever have been unreasonable and if so under what circumstances. *Roy* may well have been referring to the pre-AEDPA problem of failing to exhaust the state collateral remedies in a reasonable period of time and noting that no such problem existed in that case. This is supported by the fact that the

## II.

## A.

The state is correct, of course, that there is a requirement that a petitioner establish reasonable diligence in equitable tolling cases. This requirement is primarily concerned, however, with whether the petitioner was "diligent in his efforts to pursue his appeal *at the time his efforts* were being thwarted." *Gibbs*, 767 F.3d at 893 (quoting *Roy*, 465 F.3d at 970–71). This too makes sense. We do not wish petitioners to take undue advantage of equitable tolling by using the time during which the extraordinary circumstance exists to stretch out unreasonably the period before their petition is due. Rather, during the period of equitable tolling, we expect the

---

*only* cases cited in *Roy* as examples of waiting an *un*reasonable period of time were pre-AEDPA cases in which petitioners had waited well over one year to file their state petitions. *See id.* Most important, of course, *Roy* found no bar to equitable relief and indeed granted it to the petitioners.

In *Gibbs*, when summarizing the law, we merely commented that it is "[a]lso relevant" to the equitable tolling inquiry "whether petitioners 'pursued their claims within a reasonable period of time *before* the external impediment . . . came into existence.'" 767 F.3d at 892 (alteration in original) (quoting *Roy*, 465 F.3d at 972). *Gibbs* did not suggest or comment on whether a period of time could be unreasonable if it fell within the statute of limitations. Rather, the court merely commented that Gibbs had been diligent during the entire ten-year period between the petitioner's conviction and the ultimate filing of his habeas petition. *Id.* Because Gibbs had affirmatively demonstrated diligence for the entire period, the court had no need to consider how much time had elapsed before the extraordinary circumstance occurred or whether such an inquiry was even relevant in such a post-AEDPA case. In any event, in *Gibbs* as in *Roy*, the full equitable relief the petitioner sought was granted.

petitioner to attempt to resolve the impediment preventing timely filing so that the courts can consider his petition as soon as possible. Undoubtedly, Grant exercised reasonable diligence during the twenty-odd-day duration of the extraordinary circumstance. He requested his prison account certificate on November 21, 2011 on the very same day on which he had received notice of the California Supreme Court's denial of his state petition for postconviction relief. At that point, he had seven days remaining under AEDPA's one-year statute of limitations. When he did not hear back from prison officials for two weeks regarding his prison account certificate, he filed a second request.

Although it would probably have been possible for Grant to contact his counselor more often regarding his prison account certificate during the twenty odd days, two attempts were adequate under the circumstances. *See, e.g.*, *Fue v. Biter*, 842 F.3d 650, 655 (9th Cir. 2016) (en banc) (holding that petitioner would be sufficiently diligent where he contacted the California Supreme Court only once in fourteen months regarding the status of his state petition); *Gibbs*, 767 F.3d at 890 (holding that a prisoner was "adequately diligent" when he wrote to his attorney three times over the course of seven months to find out if the state supreme court had ruled on his state petition); *Miles*, 187 F.3d at 1105, 1107 (holding that a prisoner was diligent where he waited over six weeks to re-submit a petition which prison officials never sent to the court). *See generally Rudin*, 781 F.3d at 1055 ("The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" (quoting *Holland*, 560 U.S. at 653)). As we have recognized, determining whether an inmate was diligent is inherently "a fact-specific inquiry," *Fue*, 842 F.3d at 654, and we do not believe that waiting two weeks before contacting prison

officials a second time while awaiting the completion of an administrative task in a prison of approximately 4,000 inmates was unreasonable.

In such circumstances, it is appropriate for a prisoner to rely on his counselor to give him his prison account certificate as soon as it becomes available rather than to check in continuously with the counselor to see if the certificate has become available; the latter course would burden both the inmate and the counselor. *Cf. Fue*, 842 F.3d at 655–56 ("We also doubt that the California Supreme Court would welcome the flood of status-update requests that would likely follow were we to require all habeas petitioners to engage in a 'steady stream of correspondence' with the court to show their diligence."). As this court recently reiterated, "We do not require petitioners to engage in such 'overzealous or extreme' conduct to show their diligence." *Id.* at 655 (quoting *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011)).

B.

Although there is considerable confusion in our case law regarding whether a petitioner may need to prove that he was diligent *after* an extraordinary circumstance has ended,[9] we

---

[9] This court adopted a stop-clock approach, under which diligence is required *only* during the existence of an extraordinary circumstance, when considering equitable tolling in immigration cases in *Socop-Gonzalez v. INS*, an immigration case. 272 F.3d at 1194–96. The en banc court reasoned that requiring diligence *after* filing would "do[] away with the major advantages of statutes of limitations: the relative certainty and uniformity with which a statutory period may be calculated and applied," as well as displace "Congress' intended policy . . . to permit plaintiffs to take a specified amount of time (even if they don't 'need it')" in investigating and preparing their claims. *Id.* at 1195–96 (citation omitted).

We recognized that the stop-clock rule similarly applies to equitable tolling for petitions for writs of habeas corpus in *Gibbs*, 767 F.3d at 892.

Although some language exists in our cases suggesting that, contrary to the stop-clock approach, diligence may be required for the remainder of the filing period, it bears emphasizing that we have *never* denied relief to a petitioner because he did not exercise diligence after the relevant extraordinary circumstance had ended. The closest case, *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003), merely remanded to the district court to determine whether the petitioner had exercised reasonable diligence during *any* period of time that would then be equitably tolled because the issue before the court on appeal related only to whether an extraordinary circumstance had occurred. We find the analysis of one of our colleagues in a recent memorandum disposition persuasive in its assessment of this case: "*Spitsyn* only addresses the diligence prong of equitable tolling in dicta. . . . While the Court simply noted in its concluding paragraph that 'the record [did] not indicate why Spitsyn did not file his petition until September, when [his counsel] returned his files in April,' the Court did not indicate that Spitsyn's lack of diligence during this time period would necessarily preclude his entitlement to equitable tolling." *Bobadilla v. Gipson*, No. 14-56461, 2017 WL 908550, at *2 n.1 (9th Cir. Mar. 8, 2017) (Murguia, J., dissenting) (alterations in original) (citations omitted).

Recent cases have not altered our conclusion. In *Luna v. Kernan*, 784 F.3d 640, 651 (9th Cir. 2015), we suggested that *Spitsyn* had established a diligence-through-filing requirement. This suggestion, however, was mere dicta: at issue in *Luna* was only whether the petitioner had exercised diligence during the existence of an extraordinary circumstance – specifically, the grossly deficient performance of his attorney. *See id.* at 649–50. The court was not presented with an instance in which it needed to consider a post-extraordinary circumstances period. Similarly, in *Fue*, we asserted that "[o]rdinarily, a petitioner must act with reasonable diligence" both during and after an extraordinary circumstance, citing only a decision of the Sixth Circuit in support of this proposition. *See* 842 F.3d at 655. *Fue* was chiefly a case about what level of diligence was required for a prisoner waiting to receive delayed notice about the outcome of his state petition for postconviction relief (in other words, during the existence of an extraordinary circumstance). *See id.* at 654–56. The en banc court explicitly concluded that no post-extraordinary circumstance period

need not resolve that question in this case because it is obvious that Grant was diligent after the extraordinary circumstance had ended: he received his prison account certificate on December 19 and constructively filed his petition the same day. Thus, while we note that the stop-clock approach to equitable tolling is consistent with a court's obligation to give effect to Congress's intent to provide prisoners with a full 365 days to file their state and federal petitions, we also recognize that we have not clearly resolved the question whether diligence is required after an extraordinary circumstance has ended. Although we would be inclined to hold that diligence is not required after the termination of an extraordinary circumstance because petitioners are entitled to use all 365 days afforded them by Congress, since the issue is not before us, we leave its determination for another day.

### III.

The state's second argument is that Grant did not experience an extraordinary circumstance sufficient to justify equitable tolling. We disagree. Grant was entirely dependent on prison officials to provide him with the requested document and could not file his petition for habeas corpus without it. *See* Rules Governing Section 2254 Cases in the United States District Courts, R. 3(a) ("An original and two

---

existed because the petitioner had never received sufficient notice that his state petition for postconviction relief had been denied. *Id.* at 656. It thereafter suggested that even if Fue had received notice of the denial of his state petition, he had also diligently prepared and filed his federal petition after that notice. *See id.* In no way does this discussion establish a new rule that diligence is required after an extraordinary circumstance has ended; nor could it possibly have applied that rule in the case before it.

copies of the petition must be filed with the clerk and *must* be accompanied by (1) the applicable filing fee, or (2) a motion for leave to proceed in forma pauperis, the affidavit required by 28 U.S.C. § 1915, and a certificate from the warden or other appropriate officer of the place of confinement showing the amount of money or securities that the petitioner has in any account in the institution." (emphasis added)).[10]  Where a prisoner is dependent on prison officials to complete a task necessary to file a federal habeas petition and the staff fails to do so promptly, this constitutes an extraordinary circumstance. *Miles v. Prunty* is dispositive of this issue. 187 F.3d at 1107 ("Here, as an incarcerated pro se litigant, Miles depended on prison authorities to draw on his trust account and to prepare a check for the filing fee.  He further relied on these same authorities to mail his check and petition to the district court.  Once Miles made his request, *any* delay on the part of prison officials in complying with Miles' instructions was not within Miles' control." (emphasis added)); *see also Stillman*, 319 F.3d at 1202–03 (holding that extraordinary circumstances outside of the petitioner's

---

[10] The state asserts that Grant could have filed his habeas petition without the account certificate because "district courts regularly impose a conditional dismissal, which results in a dismissal without prejudice and with leave to amend."  The state does not explain how a pro se prisoner would be expected to know that this was the "actual practice" of district courts.  Moreover, this assertion misconstrues circuit precedent: the habeas petitioner need not prove that no prisoner could ever successfully file a timely petition under the extraordinary circumstances, only that it would be unlikely that a petitioner could do so. *See Gibbs*, 767 F.3d at 888 & n.8.  That some pro se prisoner would take the risk of filing a petition without an account certificate and have the good fortune of receiving a conditional dismissal is insufficient to overcome the equitable principle that inmates should not be forced to choose between submitting an incomplete petition or an untimely one because of prison officials' failure to provide prisoners with needed documents.

control existed where the prison's litigation coordinator promised the petitioner's lawyer that he would "obtain [petitioner's] signature in time for filing, but then broke his promise, causing the filing to be late"). And, Grant has shown that the delay of his petition until even December 2 was unexpected and that the prison account certificate was delayed because of the long Thanksgiving weekend, budget cuts, and unusually heavy employee workloads. In addition, the record demonstrates that prison officials' delay was the cause of Grant's petition being untimely: Grant sent his request to prison officials on November 21, 2011, the same day that he received the California Supreme Court's denial of state postconviction relief. At that point, he still had seven days left in the one-year filing period. Grant received his prison account certificate on December 19, 2011, and constructively filed his petition that same day. Therefore, absent prison officials' delay, Grant would have filed his petition within the AEDPA statute of limitations.

## CONCLUSION

We therefore conclude that Grant is entitled to equitable tolling from the time he requested his prison account certificate on November 21, 2011 until he received that certificate on December 19, 2011. His petition was therefore timely. The district court's order granting respondent's motion to dismiss is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.